STATE ex rel. COM'RS OF LAND OF-FICE v. SPARKS et ux.

No. 34781. Feb. 10, 1953.

Rehearing Denied March 3, 1953.

*253 P. 2d 1070.*

R. H. Dunn and Sam Hill, Oklahoma City, for plaintiff in error.

Earl Q. Gray and John M. Poindexter, Ardmore, for defendants in error.

O'NEAL, J. On December 3, 1925, O. A. Sparks and wife, Hortense Sparks, executed their note to the Commissioners of the Land Office of the State of Oklahoma in the sum of $7,500, to become due on the 15th day of December, 1930. On the same day they executed a mortgage as security for the note, covering 235 acres of land situated in Carter county, Oklahoma. On February 6, 1931, the Commissioners of the Land Office filed a suit in the district court of Carter county, Oklahoma, to recover judgment upon the note and for a foreclosure of the mortgage. On April 23, 1931, defendants filed an answer in the case. Thereafter the case remained upon the court's docket and at issue until September 1, 1943, on which date the case was dismissed upon the motion of the Commissioners of the Land Office. On the same date, the Commissioners refiled the case in the same court. On March 15, 1944, O. A. Sparks and wife, Hortense Sparks, filed their answer in the present case.

We shall hereafter refer to the State of Oklahoma on relation of the Commissioners of the Land Office of said state, as Commissioners, and O. A. Sparks and Hortense Sparks, as defendants.

The record discloses two journal entries of judgment. The case was first tried on January 6, 1948, and the first journal entry of judgment disclosed

judgment was rendered on January 7, 1949. This journal entry of judgment recites the appearance of the defendants. The court found that defendants executed the note and mortgage, and that defendants were indebted to the Commissioners in the sum of $16,532.96, with interest thereon at the rate of 10 per cent per annum from the 1st day of September, 1943, until paid, including certain expenses and attorney's fee, and entered a decree of foreclosure of the mortgage lien. That journal entry of judgment specifically provides, as follows:

"It is further ordered, adjudged and decreed by the Court that the question of personal liability of O. A. Sparks and Hortense Sparks shall be continued for a further order of this Court, and that neither this judgment nor any finding, or conclusion herein shall in any way affect the question of personal liability of said defendants or create any presumption of the liability of said defendants, but all issues as to the liability of said defendants shall remain open."

The second journal entry of judgment was entered on the 7th day of February, 1950. That decree recites that the matter came on for hearing on the Commissioners' application for the entry of a deficiency judgment against defendants. It recites the filing of the original case in February, 1931, its dismissal, and refiling on the 1st day of September, 1943, and the rendition of judgment as of January 7, 1949. That, thereafter, the court issued an order of sale, and that the land was sold for the sum of $11,500, being $4,000 more than the face of the original note. The decree further recites that after the filing of the original suit and at the demand of the Commissioners, the defendants surrendered possession of the land to the Commissioners who have been in exclusive possession thereof since the year 1932. The decree further finds that the defendants have sustained the allegations of defense contained in their answer, in that the Commissioners permitted the land and improvements thereon to become greatly deteriorated

in value; they neglected to use reasonable care as a mortgagee in possession to cultivate the land; they permitted terraces upon the land to wash out, resulting in the erosion of the top soil; they permitted inside fences to be removed and buildings upon the land to become useless for occupancy and permitted pecan trees upon one hundred acres of the land to die for the want of reasonable care. The court found that these damages resulted by the failure of the Commissioners to use ordinary and reasonable care of the property as a mortgagee in possession as required by law, and that the damages resulting to the land and improvements were as great or equal to the amount of the deficiency judgment demanded by the Commissioners. The motion of the Commissioners for a deficiency judgment in the sum of $13,500 was thereupon denied.

The Commissioners seek a reversal of the judgment upon the following grounds: (1) That the Commissioners are entitled to a personal judgment against defendants as a matter of law; (2) that the state, acting through the Commissioners, is acting in a sovereign capacity in the collection of the indebtedness and cannot be charged with negligence, and that the debt cannot be extinguished, in whole or in part, under art. 5, §53 of the Constitution of Oklahoma.

Under the first proposition the Commissioners argue that the court's judgment of January 7, 1949, found that defendants were indebted to the Commissioners in the sum of $16,532.96, and, therefore, it became the mandatory duty of the court to render a money deficiency against the defendants for said sum in its judgment entered on February 7, 1950. As we have indicated, the judgment of January 7, 1949, reserved the question of granting or refusing to grant a deficiency judgment. In other words, the court made a mathematical calculation of the sum due on the note, but reserved for future disposition the personal liability of the defendants. This liability was

denied upon proof that the Commissioners, as mortgagees in possession, had negligently operated the land for a period of approximately 20 years, which negligence resulted in the depreciation of the value of the land, together with its improvements, in a sum equal to the deficiency judgment prayed for. The Commissioners contend that the state, in its sovereign capacity, is not subject to suit and is not liable for the wrongful acts or torts of its officers, agents or employees.

The Commissioners also assert that they are entitled to a personal judgment upon the obligation incurred by the defendants under the express provision of 64 O.S. 1951 §§51 and 52. Section 51 authorizes the Commissioners to invest the permanent school funds and other educational funds, and section 52 authorizes them to invest such funds in farm mortgages under the rules and regulations defined in that section; however, the method to enforce such an obligation is governed by 12 O.S. 1951 §686, and that section specifically provides that the mortgagee's application for a deficiency judgment may be reserved for the future order of the court.

The general rule as stated in 49 Am. Jur. 83, under the title of "States, Territories, and Dependencies" is to the effect that:

"In the absence of any special statutory provision to the contrary, the state, when bringing suit for the vindication of its rights, is subject to the general rules of practice and pleading which govern private litigants."

The Commissioners contend that the judgment entered as of January 7, 1949, establish the amount of the debt due, and that under the proviso in 12 O.S. 1951 §686, and constitutional provision, art. 5, §53, the debt cannot be limited or reduced. Conceding the contention made, it has no application here for, as we have pointed out, no deficiency judgment was ever rendered against the defendants in either of the judgments, supra. Moreover, the proviso contained in section 686 only limits the court in reducing a deficiency judgment when and if a deficiency judgment has been entered in favor of the state. The legislative purpose in the enactment of the proviso was to prohibit compromises and settlements of any debts, obligations or taxes due the state after the rendition of the judgment in its favor.

The Commissioners contend that under art. 5, §53 of the Constitution, the court was not authorized to enter the judgment of February 7, 1950. That section reads:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation, or individual, to this State, or any county or other municipal corporation thereof."

This provision only restrains the legislative branch of the government to pass acts releasing or extinguishing debts due the state, and has no application here.

Under the Commissioners' second proposition it is contended that the Commissioners are acting in a sovereign capacity in the collection of the debt and, therefore, cannot be charged with negligence.

In the case of State ex rel. Commissioners of Land Office v. Hall, 191 Okla. 257, 128 P. 2d 838, the court said:

"The state is performing a governmental function and engaged in a public enterprise when 'loaning the school fund on real estate mortgages.' * * * It follows that when foreclosing a mortgage securing a loan made from school land funds it is seeking to enforce a public as distinguished from a private right."

We find no case, however, decided by this court holding that where the state enters its courts for the enforcement of a debt that the defendant is barred from asserting any right or defense which might be asserted if the action was brought by a private citizen.

When the state voluntarily enters its courts for the purpose of enforcing the collection of a debt due it, it becomes a litigant and stands in no more favorite position than its citizens.

In 49 Am. Jur. §84, under the title of "States, Territories, and Dependencies," the rule is announced as follows:

"Generally speaking, when a state voluntarily places itself in the position of a suitor, whether in its own courts or in those of a sister state, it will be held to have laid aside its sovereignty and to have taken on the garb of an ordinary suitor, so far as concerns all proper matters of adjudication growing out of the cause sued on, and the defendant will be entitled to plead and prove any and all matters properly defensive. Hence, a state by bringing an equitable action opens the door to any defense or cross complaint germane to the matter in controversy."

Neither can it be successfully contended that to permit the defense here pleaded is in effect permitting a suit against the state without its consent, for the reason that defendants do not ask any affirmative relief or a money judgment against the state, but base their defense solely upon the ground of nonindebtedness. The general rule, which is a principle of equity, has often been expressed that a mortgagee in possession is held to the exercise of such care and diligence as a prudent owner in charge of the premises would exercise. Conaway v. Thomas, 101 Okla. 227, 224 P. 965, and Brown et al. v. Leslie, Rec., 192 Okla. 43, 133 P. 2d 551. This equitable principle is aptly expressed in 49 Am. Jur. §83, under the title of "States, Territories, and Dependencies" wherein it is said:

"As a general rule, the state, when equitable relief is sought, must, like private individuals, bring itself within the known and fixed rules of equitable interference before the court will grant its petition."

In 59 C.J., States, §474, it is stated:

"In actions brought by a state defendant may, as a general rule, set up any defense directly touching the merits of the state's claim which he could have urged against a private suitor; and an equitable action by the state opens the door to any matter which may properly affect the relief demanded."

The rule thus announced is supported by the weight of authority.

The Supreme Court of Minnesota, in State v. Bucholz, 169 Minn. 226, 210 N.W. 1006, held:

"In an action by the state to recover on a seed grain note, the defendant is not prevented from asserting that the sale was induced by the fraudulent representations of the state's representative, and he may recoup any damages suffered as a result of the misrepresentations.

"When the state sues to recover money—'the defendant may in defense assert any claims which are connected with and arise out of the same transaction; that is, in such an action the defendant is "entitled to plead and prove any and all matters properly defensive, including credits and set-offs, so far as the latter are dependent on, connected with or grow out of the transaction which constituted the subject-matter of the suit." ' "

The Supreme Court of Connecticut, in State v. Kilburn, 81 Conn. 9, 69 Atl. 1028, 129 Am. St. Rep. 205, held:

"A state by bringing an equitable action opens the door to any defense or cross-complaint germane to the matter in controversy. A sovereign who asks for equity must do equity.

"This action being an equitable one, the state, by bringing it, opened the door to any defense or cross-complaint germane to the matter in controversy, that the city might see fit to interpose. A sovereign who asks for equity must do equity."

In State v. Portsmouth Savings Bank, 106 Ind. 435, 7 N.E. 379, the court held:

"Although the general rule is that the state cannot be sued, yet when it goes into court of its own accord it must be treated as any other suitor, and a cross-complaint may be filed against it.

154

"* * * Although the state cannot be sued yet when it goes into the courts to recover property, it goes as any other suitor, and must accord to the defendant the right to file a cross-complaint, and have the title litigated, settled and quieted. State v. Board of Com'rs, 101 Ind. 69, 74. From the view we are constrained to take of the case, it is not very material whether the plea be treated as an answer or as a cross-complaint; although, looking to all of its averments, and the prayer for affirmative relief, we think that it is in its essential features a cross-complaint."

The trial court found that the damages to the land and improvements, resulting during the 20 years occupancy by the Commissioners as mortgagees in possession, exceeded and was equal to the amount claimed as a deficiency judgment. No attempt was made in the trial of the cause to contradict the evidence upon which this finding is based.

We confine our adjudication here to the right of the defendants to fully defend against the action of the state. That is all that is involved and we sustain that right. However, we deem it proper to say that as to the above decisions from other states which might there sustain a money judgment over against the state for damages, we do not imply by citing them that the rule to that extent would be applicable in our state.

We have examined the entire record, and finding no error therein, we affirm.

WELCH, DAVISON, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur. HALLEY, C.J., and CORN, J., dissent.