The FOURTH NATIONAL BANK OF TUL-SA, Oklahoma, a National Banking Association, and Jack S. Dyer, Plaintiffs in Error,

v.

Jack COCHRAN, Individually and as the partner of Govits Refrigeration Company, a co-partnership composed of Jack Cochran and James Govits, and James Govits, Commercial Credit Corporation, and Edwin Vaughn, Defendants in Error.

No. 35888.

Supreme Court of Oklahoma.

April 10, 1956.

Rehearing Denied June 19, 1956.

Gable, Gotwals & Hays, Manatt, Knight & Knight, Tulsa, for plaintiffs in error.

Sanders & McElroy, John R. Woodard, Floyd L. Walker, Tulsa, for defendants in error.

PER CURIAM.

This action was instituted on September 19, 1950, by Jack Cochran, individually and as the partner of Govits Refrigeration Company, a co-partnership composed of Jack Cochran and James Govits, against James Govits, Jack S. Dyer, Commercial Credit Corporation and Edwin Vaughn seeking an accounting, dissolution of the partnership, and the recovery of reserves held by Commercial Credit Corporation to the credit of Govits Refrigeration Company.

The case was tried to the court without the intervention of a jury. Upon the conclusion of the testimony the case was taken under advisement. Six months after the trial and while under advisement plaintiff in error, Fourth National Bank, was permitted to intervene in the case. The petition of intervention claimed the reserve held by defendant, Commercial Credit Corporation, to the credit of Govits Refrigeration Company by reason of an assignment from defendant Dyer, and further alleged that the alleged partnership of plaintiff was a fictitious partnership which had failed to comply with statutes in reference to forming such a partnership. It offered no further testimony in the case other than the introduction of the assignment of Dyer to intervenor but adopted the evidence of defendant, Dyer, as its own. Thereupon the court rendered judgment for the plaintiff in the amount of $3,130 and for defendant Vaughn, in the amount of $305.66, and the assignments of Dyer and intervenor, Fourth National Bank of Tulsa, Oklahoma, were held to be of no effect. From an order overruling separate motions for new trial, the intervenor bank, and defendant, Jack S. Dyer, bring this appeal.

Plaintiffs in error contend that defendant in error, Jack Cochran, could not

maintain the action as a partner without complying with 54 O.S.1951 §§ 81 and 83.

We have carefully examined the record herein in light of the rules heretofore adopted by this court in the cases on Magnolia Petroleum Co. v. Galloway, 183 Okl. 432, 83 P.2d 174; Crisp v. Nunn, 173 Okl. 203, 47 P.2d 139; and Hill v. Paige Motor Co., 123 Okl. 254, 253 P. 97, and in view of the holdings of this court in such cases, we are unable to agree with such contention.

In the Magnolia case, supra, we held in effect that, 54 O.S.1951 §§ 81 and 83 were designed to protect persons dealing with fictitious partnerships, by compelling the disclosure of the various partners; that when such sections were relied on they were defensive in nature and unless properly pleaded may be waived. Plaintiffs in error neither pleaded nor proved non-compliance with the aforementioned sections in the manner required by the Crisp and Hill cases, supra.

Plaintiffs in error next contend that the assignment made by Govits to Dyer was a valid sale and transfer of the Dealer's Reserve Account held by Commercial Credit Corporation to the credit of Govits Refrigeration Company and that the assignment made by Dyer to the bank as security for his indebtedness to the bank is a valid transfer of said reserve account. To substantiate their contention they rely wholly upon the bona fide purchaser rule as edited in 8 C.J., Bona Fide Purchaser, pp. 1146–1149; 11 C.J.S., Bona Fide Purchaser, p. 388.

If the assignment from Govits to Dyer was valid then certainly Dyer's assignment to the bank would be valid. Therefore, we deal only with the validity of the Govits assignment.

The evidence discloses that prior to February 3, 1948, the defendant, Govits, was engaged in the refrigeration sales and service business as sole owner and operator under the firm name, James Govits Refrigeration Company. Items of merchandise which were sold on conditional sales contracts were financed through defendant, Commercial Credit Corporation. A reserve or portion of the profit of each conditional sale was withheld by Commercial to create a fund to cover unpaid contracts.

On February 3, 1948, plaintiff and defendant Govits entered into a written partnership agreement to carry on the refrigeration business under the firm name of Govits Refrigeration Company. Under this agreement Govits owned a 9/10 interest, plaintiff a 1/10 interest. At the time of the formation of the partnership the loss dealer reserve account due from Commercial to Govits was transferred to the partnership and it in turn assumed the contingent liability thereon. Also, a new dealer statement showing the partnership interests was made to Commercial. Govits was the executive manager of the new company, and plaintiff continued on as service mechanic. The defendant, Vaughn, prior to the partnership was a broker sales representative of the old company and continued in that capacity under the new company. His pay was in the form of commissions and on conditional sales made by him a portion of his commission was represented in the loss dealer reserve withheld by Commercial. The partnership continued in business until March, 1949 when, due to illness of Govits, it ceased to operate. At this time there was due and owing to Vaughn on unpaid sales contracts as commissions payable from the loss dealer reserve the sum of $305.66.

During the operation of the partnership plaintiff received none of the profits nor the return of any of his capital investment. Govits had informed him by letter that his share of the profits was $930 in addition to his capital investment. On February 16, 1950, approximately one year after the partnership ceased to do business, Govits sold his holdings in Tulsa, and by letter to Commercial Credit Corporation to the attention of Mr. R. E. Cole purportedly assigned the loss dealer reserve held by it, to the defendant, Jack S. Dyer. Said letter is as follows:

"February 16, 1950
"Commercial Credit Corporation,
"1021 South Main Street
"Tulsa, Oklahoma
"Attention: Mr. R. E. Cole.
"Gentlemen: You are notified that I do hereby assign to Jack S. Dyer, 804

Ritz Building, Tulsa, Oklahoma, any and all funds due me by Commercial Credit Corporation or which shall become due to me by Commercial Credit Corporation, and you are notified and directed to pay all funds now due or hereinafter due me directly to Jack S. Dyer, 804 Ritz Building, Tulsa, Oklahoma, and this assignment shall be effective until you are notified in writing by Jack S. Dyer of its termination.

> "(s)  James Govits
>
> "James Govits dba Govits Refrigeration Co."

On February 17, 1950, Commercial by its letter acknowledged a communication from Jack S. Dyer of notification of the letter of assignment from Govits. Commercial's letter also notified Dyer that the reserves were payable upon the happening of certain contingencies and provided that no obligations arising out of past or future transactions between them and dealer was owing by the dealer to them. Commercial also, in this letter, informed Dyer that he would be notified in the event any of the reserves became payable to dealer in accordance with the terms of their agreement with dealer.

The evidence further discloses that prior to Govits' purported assignment to Dyer, the defendant, Vaughn, had contacted Dyer with reference to Dyer making a loan to Govits and had taken Govits to Dyer's office. Although contradicted by Dyer, Vaughn testified that he told Dyer that Govits wanted the money for the purpose of paying Vaughn and Cochran such sums as he owed them.

On February 16, 1950, the date of the letter of assignment written to Commercial by Govits, Dyer attempted to contact Commercial. Failing to contact Commercial, Dyer and Govits went to intervenor bank where said letter of assignment was prepared at which time Dyer borrowed $1,000 from said bank and gave it to Govits to pay off a $1,000 loan of Govits to said bank. On February 17, 1950, Govits and Dyer went to Commercial at which time the conditional sales contracts in possession of Govits and which related to the loss dealer reserve account held by Commercial to the credit of Govits Refrigeration Company was verified.

It does not appear that any inquiry was made by Dyer of Commercial as to the ownership status of said account it seemingly being presumed by Dyer that Govits was the sole owner of same in the event all contracts of sale were ultimately paid. Dyer on that day paid Govits an additional $1,000, and in March, 1950, an additional $200. In June, 1950, Dyer received another communication from Commercial relating to the loss dealer reserve account wherein he was informed of the partnership status of Govits Refrigeration Company.

It is clear from the record that the loss dealer reserve account was a partnership account, and that said account was payable only in the event the conditional sales contracts financed through Commercial were fully paid. Therefore, being such partnership account it was liable for partnership debts only. It is apparent that if the conditional sales contracts financed by Commercial became unpaid then such contracts would be collected by Commercial from the loss dealer reserve account and nothing would have been payable therefrom to Govits Refrigeration Company.

By the assignment to Dyer, made a year after the partnership ceased to exist, it is clear that Govits was attempting to assign only the interest he had in the contract between Govits Refrigeration Company and Commercial. The most that can be said of such contract is that it is merely a chose in action, and it is the general rule, that the assignee of a chose in action takes it subject to all existing claims and acquires no greater interest therein than his assignor had at the time of the assignment. See Keys v. Ponder, 118 Okl. 234, 226 P. 73, 247 P. 33, and cases therein cited. However, plaintiffs in error contend that Govits was the sole owner or apparent owner of Govits Refrigeration Company which permitted him to do with the loss dealer reserve account as he saw fit, and Dyer, being an innocent purchaser for value, became the owner of said loss dealer reserve account.

By the assignment Govits was attempting to assign to Dyer only such rights as he might have in the loss dealer reserve under the contract between Commercial and Govits Refrigeration Company. The payment of

such account depended upon the happening of certain contingencies and there was a question as to whether Govits Refrigeration Company could ever claim the account.

At the time Dyer obtained the assignment from Govits it was apparent that Govits was doing business under an assumed or fictitious name (Govits Refrigeration Company). While no presumption of the existence of a partnership ordinarily arises from the use of a trade name, a presumption of partnership does arise from the use of a name such as is commonly employed when a partnership exists, such as C & Co., etc. See 68 C.J.S., Partnership, § 51, page 467. Commercial knew the fund which it held to the credit of Govits Refrigeration Company belonged to the partnership, and its Mr. Cole so testified. If Dyer had inquired of Commercial as to the status of ownership of this fund, he would have learned that it belonged to the partnership and not to Govits individually. At the time of the assignment there was no way to tell what disposition would be made of the loss dealer reserve account. Also the very disclosure that Govits was doing business under a fictitious name, as commonly employed when a partnership exists, together with Vaughn's statement to him, was sufficient to put any prudent business man upon inquiry.

In Keys v. Ponder, supra, it was said that whatever is notice enough to put a reasonably prudent person on his guard and calls for inquiry is notice of everything to which such inquiry might have led; and when a person has sufficient information to lead him to a fact, he shall be deemed conversant with it.

The judgment of the trial court is affirmed. Judgment is here rendered in favor of the plaintiff and against the sureties on the supersedeas bond on file herein, such judgment on the supersedeas bond to be entered and enforced by the trial court, as if there rendered.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, BLACKBIRD and HUNT, JJ., concur.

WELCH, DAVISON, HALLEY and JACKSON, JJ., dissent.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner REED and approved by Commissioners NEASE and CRAWFORD, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.