STATE of Maine DEPARTMENT OF
HUMAN SERVICES

v.

Carl Henry WEBSTER.

Supreme Judicial Court of Maine.

March 2, 1979.

Kate Clark Flora (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Theodore K. Hoch (orally), Bath, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

Appellee Webster acknowledged paternity of a child born out of wedlock in July, 1974. Although appellee did not marry the child's mother, he formally acknowledged paternity in order to legitimate the child for purposes of intestate succession. *See* 18 M.R.S.A. § 1003 (1964).

In May of 1977, appellant State of Maine brought a petition in Superior Court, alleging that the child was being supported by

the State through the program for Aid to Families with Dependent Children (AFDC) and seeking to compel appellee to contribute to that support. In defense, appellee offered a court-approved settlement, executed in 1975, of a paternity suit brought by the mother two months after the child was born. The settlement purported to release appellee "from any and all liability as the alleged father of the child" in exchange for a lump sum payment of $2,500. The settlement release was executed only by the mother, and neither the release nor the District Court's statement of approval referred to any liability of appellee except his liability to the mother. The Superior Court ruled that the court-approved settlement barred the State's petition for contribution and required judgment for appellee.

The Maine Department of Human Services is authorized by 22 M.R.S.A. § 3754 (Supp.1965–1978) to petition to enforce parental support obligations when a child is receiving AFDC benefits. The State derives additional authority to enforce the liabilities of a father from section 2 of the Uniform Act on Paternity, 19 M.R.S.A. § 272 (Supp.1978–1979), which provides:

"Paternity may be determined upon the complaint of the mother, child or the public authority chargeable by law with the support of the child. If paternity has been determined or has been acknowledged according to the laws of this State, the liabilities of the father may be enforced in the same or other proceedings by the mother, child or the public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, necessary support or funeral expenses, and by other persons including private agencies to the extent that they have furnished the reasonable expenses of pregnancy, confinement, education, necessary support or funeral expenses."

The Uniform Act on Paternity contains a provision for settlement, as follows:

"An agreement of settlement with the alleged father is binding only when approved by the court." 19 M.R.S.A. § 283 (Supp.1978–1979).

We are thus required to determine the proper construction of section 283 of title 19, an issue we expressly left unresolved in a somewhat different context in *Arsenault v. Carrier*, Me., 390 A.2d 1048, 1049 n. 1 (1978).

The State contends that it has a right under 22 M.R.S.A. § 3754, independent of the mother's rights under the Uniform Act on Paternity, to enforce the father's duty to contribute to the child's support, which right could not be terminated by a proceeding to which it was not a party. If that right may be cut off in a proceeding under section 283 to which it is not a party, the State argues, the purposes served by the statute may be easily subverted.

Appellee relies on the fact that the Uniform Act on Paternity recognizes court-approved settlements. Noting that section 283 describes the court-approved agreement as "binding" without specifying who is bound, he contends that the statute contemplates the full effectiveness of any court-approved settlement under the Act. As a practical matter, appellee argues, if settlements between the parents bind only the parents themselves, such settlements will rarely be used. Aside from a natural reluctance to introduce the public authorities into an already difficult situation, the putative father may reasonably expect difficulty in persuading the State to concur in any settlement of his obligation to contribute to support of the child in consideration of any lump sum he can afford to pay at the time of settlement. In a somewhat similar situation under the old bastardy laws, the mother and father could enter into a final settlement of the support question unless the town overseers of the poor seasonably entered an objection in writing. *Cook v. Cook*, 132 Me. 119, 167 A. 852 (1933). Finally, appellee contends, there is some utility in making paternity suits manageable at the behest of the mother, who is usually the plaintiff under section 272. To deny her the power to settle all liabilities of the father without joining the State and an independent representative of the child will

make it more difficult for her to obtain a settlement at a time when she may be especially in need of financial assistance.

Though appellee's arguments have some force, we think that the State's position is more in accord with the manifest purposes of the relevant statutes. The mother has different interests from those of the child and the State, and it is unrealistic to regard her as their virtual representative in a paternity action. At the time of settlement, the pressure of the mother's immediate financial needs may place her under a handicap in bargaining for future support of the child. Moreover, if the mother expects to be the beneficiary of AFDC payments, the prospect of the father's contribution may not be a matter of major concern to her. In contrast, the State's interest is to obtain contributions from the father where possible. The child's interest, also, may be quite different from the mother's. The child has a prospective interest, arising from the father-child relationship, in the benefits normally flowing from that relationship over and above necessary financial support. In short, the interests of the mother, the State, and the child are divergent, and we see no sufficient reason to depart from the general principle that the settlement of a legal action by the parties to it does not terminate the rights of strangers to the action; that is, of persons who were not represented by the parties or otherwise in privity with them.

Section 283, requiring court approval to validate a settlement with the alleged father, does not assign to the court any function of protecting all the divergent interests. It is not the intent of section 283 that the State's interest be represented by the court itself with the effect of making the approved agreement binding on the State. To have such an extraordinary consequence, the statute would have to be worded to that effect far more explicitly than it is. The requirement of court approval of the settlement serves a sufficient, useful purpose in assuring some judicial examination of the fairness of the settlement agreement as between the parties to it.

Section 3754 of title 22 was enacted so that public funds will not bear the entire burden of supporting a child whose parents are able to provide some support. That purpose would be subverted if the mother could effectively release the State's rights by settling with the father. It could not have been the legislative purpose in enacting the Uniform Act on Paternity to frustrate the purpose of 22 M.R.S.A. § 3754. In view of the great changes in paternity legislation since *Cook v. Cook, supra,* was decided, that case is no longer controlling.

Therefore, an agreement of settlement entered into solely by the mother and father, even though court-approved, does not bar the State from proceeding with an action under 22 M.R.S.A. § 3754.

The entry is:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded for further proceedings consistent with this opinion.