**STATE of Oklahoma DEPARTMENT OF HUMAN SERVICES ex rel. K.A.G., Appellant,**

v.

**T.D.G., Appellee.**

No. 79578.

Supreme Court of Oklahoma.

Oct. 5, 1993.

Jena J. Sams, Asst. Dist. Atty., Durant, for appellant.

Thomas R. Carlock and Gregory L. Johnson, Ardmore, for appellee.

KAUGER, Justice.

The single first impression issue presented is whether a release between a

mother and a putative father absolving him of support obligations bars the appellant, Department of Human Services (Human Services), from bringing a paternity action and establishing support obligations. We find that a release attempting to deprive permanently a child of support is void as against public policy, and that it does not prevent Human Services from bringing a paternity action and establishing support obligations pursuant to 10 O.S.1991 § 89.[1]

## FACTS

When her child, M.T.G., was born, K.A.G. (mother) was an unwed mother. She applied for Aid to Families with Dependent Children (AFDC). The benefits were approved by the appellant, Department of Human Services (Human Services) in 1989. Pursuant to 56 O.S.1991 § 237(C)(1),[2] the mother executed an assignment to Human Services of any support rights she or her child might be entitled to receive. She named the appellee, T.D.G. (putative father), as the child's father.[3] Upon approval of the benefits, Human Services commenced an action to determine paternity and to establish support obligations on January 13, 1992.[4] The father moved to dismiss on the basis of a 1979 release executed by the mother. It provides:

"Whereas a dispute has arisen regarding the paternity of the minor child [M.T.G.] and it is the desire of the parties to settle out of Court, the undersigned parties, [K.A.G.] and [T.D.G.] hereby agree that: 1. [T.D.G.] acknowledges that he is not the father of said child and hereby releases all claims to said child incident thereto, including, but not necessarily limited to, guardianship of the person or estate and rights of visitation.

1. Title 10 O.S.1991 § 89 provides in pertinent part:
"A. The mother, father, guardian or custodian of the child, the Department of Human Services, a public or private agency or authority chargeable with the support of the child, or the child may bring an action in civil proceeding in district court to determine paternity and the amount of child support due and owing for the maintenance of the child....
G. Attorneys for the Department of Human Services may appear or initiate an action brought under this section on behalf of:
1. a recipient of aid to families with dependent children; or
2. a person not receiving aid to families with dependent children, upon the request of such person and proper application pursuant to rules and regulations adopted by the Department. A reasonable fee and costs may be assessed for the services by the Department.
H. In a proceeding brought under subsection G of this section by the Department of Human Services, the court may, and unless it is not in the best interests of the child, shall, limit the issues in that proceeding to issues of paternity and support unless issues of custody and visitation are specifically and affirmatively pled by the father."

2. Title 56 O.S.1991 § 237 provides in pertinent part:
"A. The Department of Human Services, hereinafter referred to as 'Department', as the single state agency designated to administer a statewide plan for child support, is authorized, in accordance with Title IV, Part D, of the Federal Social Security Act, as amended, 42 U.S.C., Section 651 et seq. to provide child support collection, parent location services and paternity determination services to enable it to participate in programs established by federal law....
C. 1. An applicant for or recipient of aid to families with dependent children, hereinafter referred to as 'recipient', shall be required to assign to the Department any rights of or support from any other person which the recipient may have in his or her own behalf or for a child for whom the recipient is applying for or receiving assistance, including the right to an amount accrued at the time the assignment is executed....."

3. K.A.G. claims that from late 1977 until early 1978, she had sexual relations with T.D.G. Although T.D.G. admits meeting K.A.G., he denies any intimacy. The child, M.T.G., was born on August 1, 1978.

4. Title 10 O.S.1991 § 89, see note 1, supra. See also, 10 O.S.1991 § 70 providing:

"Proceedings to establish paternity may be brought in the appropriate district court by civil proceedings brought by the mother, the father, guardian or custodian of the child, the Department of Human Services, the district attorney, a public or private agency or authority chargeable with the support of the child, or by the child. The court after determining paternity in a civil action shall provide for the support and maintenance of the child. The court shall further make provision for custody and visitation based upon the best interests of the child."

2. [K.A.G.], in consideration hereof, agrees not to prosecute a paternity action against [T.D.G.] nor shall she ever seek to obtain child support from him or attempt to hold him out as the father of said child.

Agreed to this 28th day of May, 1979.

/s/[T.D.G.]

/s/[K.A.G.]"

The trial court granted the motion to dismiss. Finding that 10 O.S.1991 § 77.1[5] requires a trial court to order any defendant denying paternity to submit to a blood test, the Court of Appeals found the release void as against public policy. We granted certiorari on May 3, 1993, to consider a first impression question—whether a contract between a mother and a putative father which provides that the man is not the father of the child, and which absolves him of the duty to support a minor child bars Human Services from bringing a paternity action and establishing support obligations.

## A RELEASE ATTEMPTING TO DEPRIVE PERMANENTLY A CHILD OF SUPPORT IS VOID AS AGAINST PUBLIC POLICY. IT DOES NOT PREVENT HUMAN SERVICES FROM BRINGING A PATERNITY ACTION AND ESTABLISHING SUPPORT OBLIGATIONS PURSUANT TO 10 O.S.1991 § 89.

The putative father argues that the contract entered into between himself and K.A.G. is valid, and that failure to enforce it conflicts with this Court's opinion in *Thrash v. Thrash*, 809 P.2d 665, 667–68 (Okla.1991). Human Services insists that the release does not bar it from bringing a paternity action and establishing support obligations.

*Thrash* is distinguishable on its facts from the cause presented here. In *Thrash*, the parents entered into an agreement providing for automatic increases in child support. Finding that the contract was not unenforceable *per se*, and that neither fraud nor mistake was proven, we upheld the parental agreement for support. **Here, the contract sought to be enforced is not an agreement for support. Instead, it is a waiver of any and all liability of the putative father.**[6]

The issue of whether an unwed mother may waive her child's right to support from the child's father is one of first impression in Oklahoma. Courts in other jurisdictions which have addressed the issue uniformly hold that an illegitimate child's right to support cannot be contracted away by its mother. These courts find that releases executed by a mother, purporting to affect support, are invalid to the extent that they might diminish the rights of the child.[7] The agreements have been struck on grounds that: 1) the child was not a party

---

**5.** Title 10 O.S.1991 § 77.1 provides:

"When the paternity petition is filed, the court shall order the defendant to appear and show cause why the court should not determine him to be the father. If the defendant fails to appear, the court shall upon the findings of the judge enter an order determining paternity. If the defendant appears and does not admit paternity, then the court shall enter at that time an order directing blood tests to determine paternity."

**6.** In *Thrash v. Thrash*, 809 P.2d 665, 667–68 (Okla.1991), we acknowledged that Oklahoma recognizes the general rule that in proceedings to enforce child support the defenses of laches, estoppel, waiver, acquiescence, release or agreement may be available to the obligor. Here, T.D.G. relies upon the defenses of acquiescence and agreement in relation to his agreement with K.A.G. Because we find that the settlement agreement is void, these defenses are not applicable. Additionally, although T.D.G. states in his answer brief on appeal that the agreement

was entered some thirteen years ago, he does not assert that Human Services has been dilatory in pursuing the instant paternity action.

**7.** *Shelby J.S. v. George L.H.*, 181 W.Va. 154, 381 S.E.2d 269, 271 (1989) (Dismissal of initial paternity suit without prejudice, pursuant to ex parte agreement in which mother agreed not to prosecute another suit, did not bar institution of second suit.); *Worthington v. Worthington*, 250 Ga. 730, 301 S.E.2d 44, 48 (1983); *Johnson v. Norman*, 66 Ohio St.2d 186, 421 N.E.2d 124, 126 (1981) (Minor child could pursue action for support and maintenance when mother had previously dismissed, with prejudice, a paternity suit against putative father.); *Lennon v. Walrod*, 250 N.W.2d 33–34 (Iowa 1977) (Agreement between putative father and minor's mother releasing father from all obligations for support upon lump-sum payment was not a bar to subsequent action by mother as next friend of the minor to establish paternity and to compel support payments because release was not ap-

to the agreement;[8] 2) the minor has an independent right to institute a paternity action;[9] 3) the agreement was not approved by a tribunal;[10] 4) the right to proceed in an action for support belongs to the child, and that it cannot be bargained away by a settlement between the father and the mother;[11] and 5) any attempt to permanently deprive a child of support is void as against public policy.[12]

Here, the minor was not a party to the contract, and no court approved it.[13] Pursuant to 10 O.S.1991 §§ 70[14] and 89,[15] a child has an independent right to maintain a paternity action and to request support and maintenance. Additionally, our decisions addressing a married woman's ability to relieve a husband of the obligation to support his minor children,[16] and the statutory scheme providing that individuals judicially determined to be the father of a child are liable for the support and education of the child to the same extent as the father of a child born in wedlock,[17] mandate that we strike the release. Public policy demands that, in matters of support, the best interest of the child be paramount.[18] We can perceive of no situation in which allow-

proved by court.); *Gammon v. Cobb,* 335 So.2d 261, 266–67 (Fla.1976); *Lawrence v. Boyd,* 207 Kan. 776, 486 P.2d 1394, 1397 (1971); *Erwin L.D. v. Myla Jean L.,* 41 Ark.App. 16, 847 S.W.2d 45, 47 (1993); *Ernest P. v. Superior Court,* 111 Cal.App.3d 234, 168 Cal.Rptr. 438, 441 (1981); *Tuer v. Niedoliwka,* 92 Mich.App. 694, 285 N.W.2d 424, 426 (1979); Annot., "Validity & Construction of Putative Father's Promise to Support or Provide for Illegitimate Child," 20 A.L.R.3d 500, 535 (1968).

**8.** *Ernest P. v. Superior Court,* see note 7, supra.

**9.** *Johnson v. Norman,* see note 7, supra.

**10.** *Lennon v. Walrod,* see note 7, supra.

**11.** *Shelby J.S. v. George L.H.,* see note 7, supra; *Gammon v. Cobb,* see note 7, supra; *Lawrence v. Boyd,* see note 7, supra; *Tuer v. Niedoliwka,* see note 7, supra. T.A.G.'s argument that Human Services' authority to bring the instant paternity suit is merely derivative of the rights of the mother is unpersuasive in light of the reasoning of these courts. See, *National Bank of Commerce v. ABC Constr. Co.,* 442 P.2d 269, 276–77 (Okla.1966); *Fourth Nat'l Bank v. Cochran,* 298 P.2d 784, 787 (Okla.1956). (Providing that the assignee of a chose in action takes no greater right than was possessed by the assignor at the time of assignment.).

**12.** *Worthington v. Worthington,* see note 7, supra (Also relied upon statutory scheme.); *Erwin L.D. v. Myla Jean L.,* see note 7, supra.

**13.** Title 10 O.S.1991 § 85 provides in pertinent part:

"A settlement that is approved by the district court relieves the individual who has been judicially determined to be the father of a child of all other liability for the support and education of that child to the extent to which settlement is honored by him...."

**14.** Title 10 O.S.1991 § 70, see note 4, supra.

**15.** Title 10 O.S.1991 § 89, see note 1, supra.

**16.** *Parkey v. Parkey,* 371 P.2d 711, 714 (Okla. 1962); *Donahoe v. Alcorn,* 188 Okla. 305, 108 P.2d 786, 789 (1940); *Bynum v. Bynum,* 184 Okla. 36, 84 P.2d 424, 427 (1938); *Ahrens v. Ahrens,* 67 Okla. 147, 169 P. 486–87 (1917); *Bingham v. Bingham,* 629 P.2d 1297, 1299 (Okla. 1981); *Raczynski v. Raczynski,* 558 P.2d 425, 429 (Okla.Ct.App.1976).

**17.** Title 10 O.S.1991 § 83 provides in pertinent part:

"A. An individual who has been judicially determined to be the father of a child is liable for the support and education of the child to the same extent as the father of a child born in wedlock. An action to enforce this obligation to support and educate the child may be brought by the mother or custodian or guardian of the child, by the public authority chargeable with the support of the child, or by the child. An action to determine paternity and to enforce this obligation may be brought any time before the eighteenth birthday of the child. An action to establish paternity under this act shall be available for any child for whom a paternity action was brought and dismissed because of the application of a statute of limitations of less than eighteen (18) years....
B. An individual who has been judicially determined to be the father of a child may be ordered to pay all or a portion of the costs of the birth and the reasonable expenses of providing for said child or the amount of public assistance paid to or for the benefit of said child prior to the determination of paternity, provided that liability for support provided before the determination of paternity may be imposed for only five (5) years preceding the filing of the action...."

**18.** See, 43 O.S.Supp.1992 § 118, note 20, infra, in which trial courts are given the discretion to deviate from the standards provided in the child

ing parents to forever bar a child's right to support would be in the best interest of the child. A contract which attempts permanently to deprive a child of support is void as against public policy. Such an agreement does not prevent Human Services from bringing a paternity action and establishing support obligations pursuant to 10 O.S.1991 § 89.[19]

Although parties represented by counsel may contract on the issue of child support,[20] a trial court is not bound by the agreement if the amount of child support is unjust, inequitable, unreasonable or inappropriate under the circumstances or is not in the best interest of the child.[21] Since 1917, we have held that a married woman cannot, by a separate contract, relieve her husband of the obligation to support his minor children.[22] Likewise, pursuant to 10 O.S.1991 § 83,[23] an individual judicially determined to be the father of a child is liable for the support and education of the child to the same extent as the father of a child born in wedlock. Because § 83 imposes identical duties of support upon husbands and upon unwed fathers for the support of their offspring, and because married women may not relieve their husbands of support obligations to their children, an unwed mother may not, through settlement agree-

ment, relieve a putative father of his obligation to support his minor child. Indeed, equal protection concepts would be violated if the right to seek support from parents during a child's minority were granted to children born in wedlock but denied to those who are not.[24] Once a state grants an opportunity for legitimate children to obtain parental support, it must also grant the opportunity to children born out of wedlock.[25] If a state posits a judicially enforceable right on behalf of children to needed support, as the Legislature has done through § 83, there is no constitutionally sufficient justification for denying the same right to a child born out of wedlock. To do so would be a denial of equal protection.[26]

We have found only one case involving a contract in which the parties alleged that the release itself would bar a proceeding by the state to enforce parental support obligations if a child is receiving AFDC benefits—*State v. Webster*, 398 A.2d 792, 794 (Maine 1979). It, like Oklahoma statutory and case law and judicial decisions from other jurisdictions, supports the conclusion that such an agreement does not bar a proceeding to establish paternity and to impose support obligations upon a putative

support guidelines when, to do so, is in the best interest of the child.

**19.** Title 10 O.S.1991 § 89, see note 1, supra.

**20.** Title 43 O.S.Supp.1992 § 118 provides in pertinent part:

"Except in those cases where parties represented by counsel have agreed to a different disposition, there shall be a rebuttable presumption in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of the following guidelines is the correct amount of child support to be awarded. The court may deviate from the level of support suggested by these guidelines where the amount of support as indicated is unjust, inequitable, unreasonable or inappropriate under the circumstances, or not in the best interests of the child or children involved...."
B. Walker, "Changes in Circumstances Under Child Support Guidelines," 62 O.B.J. 3199, 3201 (1991); P. Davidson, "Analysis of the New Child Support Guidelines," 59 O.B.J. 2080 (1988).

**21.** *Thrash v. Thrash*, see note 6, supra; B. Walker, "Changes in Circumstances under Child Support Guidelines," see note 20, supra.

**22.** *Parkey v. Parkey*, see note 16, supra; *Donahoe v. Alcorn*, see note 16, supra; *Bynum v. Bynum*, see note 16, supra; *Ahrens v. Ahrens*, see note 16, supra; *Bingham v. Bingham*, see note 16, supra; *Raczynski v. Raczynski*, see note 16, supra.

**23.** Title 10 O.S.1991 § 83, see note 17, supra.

**24.** *Mills v. Habluetzel*, 456 U.S. 91–92, 102 S.Ct. 1549, 1551, 71 L.Ed.2d 770, 773 (1982); *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56, 60 (1973); *Department of Public Aid v. Miller*, 146 Ill.2d 399, 166 Ill.Dec. 922, 924–25, 586 N.E.2d 1251, 1253–54 (1992).

**25.** *Mills v. Habluetzel*, see note 24 456 U.S. at 97–98, 102 S.Ct. at 1553–54.

**26.** *Gomez v. Perez*, see note 24 409 U.S. at 538–39, 93 S.Ct. at 875; *Department of Public Aid v. Miller*, see note 24 166 Ill.Dec. at 924, 586 N.E.2d at 1253.

father. Although in *Webster*, the father acknowledged paternity of the child, unlike the denial of paternity by the alleged father here, he entered a court-approved settlement agreement with the mother providing for a release of liability for further support of the child in exchange for a lump-sum payment. After AFDC benefits were awarded for the support of the child, the Maine Department of Human Services petitioned to enforce parental support obligations. The father, as does T.D.G. here, argued that the contract barred any proceeding by the Maine Department of Human Services.

In *Webster*, the Maine court found that the state's interest in obtaining contributions from the father outweighed arguments in favor of a quick settlement of the paternity action—even if immediate settlement might be important to the mother's economic well being. The court reasoned in *Webster* that the purpose of statutes similar to 10 O.S.1991 § 89 [27] is to ensure that public funds will not bear the entire burden of supporting a child whose parents are able to provide some support. The Maine court found that purpose would be subverted if the mother could effectively release the state's rights by settling with the father. Although the father in *Webster* acknowledged paternity, whereas the alleged father here has consistently denied that he fathered the child, we are persuaded by the *Webster* rationale. If, indeed, T.D.G. is not the father of M.T.G., child support payments will not be imposed by the courts of this state.

## CONCLUSION

A minor dependent must be supported properly. Public policy prohibits a parent's contracting away a child's right to support.[28] A contract attempting permanently to deprive a child of support is void as against public policy. Such an agreement does not prevent Human Services from bringing a paternity action and establishing support obligations pursuant to 10 O.S. 1991 § 89.[29] We note that the issue which will finally determine T.D.G.'s liability or lack thereof for support payments—paternity—is not presented here. We make no finding on that issue.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; REVERSED AND REMANDED.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA and SUMMERS, JJ. concur.

ALMA WILSON, J. concurs in part, dissents in part.

WATT, J. dissents.

WATT, Justice, dissenting:

The issue in this case is not whether the parties' 1979 agreement bars the Department of Human Services ("DHS") from bringing a paternity and support action against T.D.G. Clearly, K.A.G. could not have contracted away the statutory rights of DHS to bring such an action in its own capacity. *See* 10 O.S.1991 §§ 70 and 89(A). However, DHS did not bring the present action in its own capacity, but rather sued *pursuant to an assignment from* K.A.G. Because I believe that K.A.G. lawfully contracted away any rights she had to seek support from T.D.G., DHS acquired nothing through the assignment. While I do not necessarily disagree with the content of the majority opinion, I believe that under the procedural posture of this case—where DHS brought suit pursuant to an assignment of rights from K.A.G.—the trial court properly dismissed this action. On this basis, I respectfully dissent.

K.A.G. gave birth to her child on August 1, 1978. Although there is some indication in the record that a paternity action was filed against T.D.G. in late 1978 and later

---

**27.** Title 10 O.S.1991 § 89, see note 1, supra.

**28.** See, *Shelby J.S. v. George L.H.,* note 7, supra; *Worthington v. Worthington,* note 7, supra; *Johnson v. Norman,* note 7, supra; *Gammon v. Cobb,* note 7, supra; *Lennon v. Walrod,* note 7, supra; *Gammon v. Cobb,* note 7, supra; *Law-*

*rence v. Boyd,* note 7, supra; *Erwin L.D. v. Myla Jean L.,* note 7, supra; *Ernest P. v. Superior Court,* note 7, supra; *Tuer v. Niedoliwka,* note 7, supra; Annot., "Validity & Construction of Putative Father's Promise to Support or Provide for Illegitimate Child," note 7, supra.

**29.** Title 10 O.S.1991 § 89, see note 1, supra.

dismissed, K.A.G. denied filing any action and the record contains no such evidence. Notwithstanding, K.A.G. hired an attorney who drafted the agreement at issue.[1] Both parties signed the agreement on May 28, 1979. T.D.G. had no contact with K.A.G. or her child from that date until he received notice of this action in early 1992.

In 1989, DHS approved K.A.G. to receive Aid to Families with Dependent Children ("AFDC") on condition that she assign to DHS any rights to child support.[2] K.A.G. acquiesced and named T.D.G. as the only possible father of her child. *Pursuant to the assignment from K.A.G.*, DHS commenced the present action against T.D.G. to establish paternity and determine his support obligation.

Initially, it should be stressed that at the time the 1979 agreement was executed, T.D.G. was not, in the eyes of the law, considered the father of K.A.G.'s minor child. Because T.D.G. and K.A.G. were never married, there was no legal presumption that T.D.G. was the father. *See* 10 O.S.Supp.1973 § 3. Furthermore, T.D.G. never adopted the child, *see* 10 O.S.1971 § 55 et seq., nor had he ever been judicially declared the child's father. *See* 10 O.S. 1971 § 71 et seq. Had any of these circumstances existed, the inquiry would be at an end. Agreements between *parents* regarding support of their children are not binding upon courts, *Parkey v. Parkey*, 371 P.2d 711, 714 (Okla.1962); *Donahoe v. Alcorn* 188 Okla. 305, 108 P.2d 786 (1940), and only courts have the power to sever *parental* rights. 10 O.S.Supp.1977 § 1130; *Bingham v. Bingham*, 629 P.2d 1297, 1300 (Okla.Ct.App.1981). However, no such circumstance exists in the present case. Therefore, T.D.G. entered into the agreement possessing no recognized legal rights or duties with respect to K.A.G.'s child.[3]

The foregoing authority also makes it clear that K.A.G. could not have contracted away *her duty* to provide support for her minor child. If the agreement had purported to do such, again the inquiry would cease. However, this issue is not presented. K.A.G. did not attempt to relieve herself of any duty to provide support to her child, *see Parkey*, supra., nor did she attempt to contract away the duties of the recognized father. *See Donahoe*, supra. Rather, she contracted away any rights she possessed to seek support from T.D.G., who had no existing legal rights or duties to provide for the child. K.A.G. is still liable for the support of her child. The agreement simply prevents her from seeking such support from T.D.G. Under the facts of this case, I can find no reason to hold that K.A.G.'s promise under the agreement violates child support laws.

As previously stated, K.A.G. applied for AFDC and, as required, assigned to DHS all rights of child support which she possessed. Indeed, DHS pleaded these facts in its Petition. Rather than bring the present action in its own capacity, DHS chose to initiate the instant proceedings *pursuant to the assignment from K.A.G.* As the assignee of K.A.G.'s claim for child support, DHS merely stands in K.A.G.'s shoes. An assignee "acquires no greater right by virtue of the assignment than was possessed by the assignor at the time of the assignment...." *National Bank of Commerce of Tulsa v. ABC Const. Co.*, 442 P.2d 269, 277 (Okla.1966). Further, "[w]hen the State voluntarily enters its courts for the purpose of enforcing the collection of a debt due it, it becomes a litigant and stands in no more favorable position than its citizens." *State ex rel. Comm'rs of Land Office v. Sparks*, 208 Okla. 150, 253 P.2d 1070, 1074 (1953). A debt was created in favor of the State when DHS began making AFDC payments to K.A.G. 56 O.S.1991 § 238. DHS, in its capacity as K.A.G.'s assignee, stood in no more favorable position than K.A.G. when

---

1. *See Majority* at 991–92 for the text of the agreement.

2. Title 56 O.S. Supp.1987 § 237(C)(1) mandated that an applicant for or recipient of AFDC must assign to DHS any rights of support for a child for whom the applicant/recipient is applying or receiving assistance.

3. The majority relies, at least in part, upon the foregoing authority in holding that the 1979 agreement was void as against public policy. Because those cases addressed only *parental* rights and duties, they are inapplicable to the instant facts.

it sought to collect that debt. Thus, every defense available to T.D.G. prior to the assignment is available against DHS as K.A.G.'s assignee. *National Bank of Commerce of Tulsa*, 442 P.2d at 277; *Fourth Nat'l Bank of Tulsa v. Cochran*, 298 P.2d 784, 787 (Okla.1956). Because K.A.G. lawfully contracted away any rights she had to seek support from T.D.G., DHS acquired nothing through its assignment from her.

In conclusion, I believe the 1979 agreement between K.A.G. and T.D.G. is valid and enforceable by T.D.G. against K.A.G. T.D.G.'s defense to any action initiated by K.A.G. extends to this action, which was brought by DHS in its capacity as assignee of K.A.G.'s rights. Although DHS could have elected to bring this action in its own capacity, *see* 10 O.S.1991 §§ 70 and 89(A), it did not do so. Therefore, under the procedural posture of this case, it is my opinion that the trial court properly dismissed this action against T.D.G.