2010 OK CIV APP 32

**Terri L. COPE, Plaintiff/Appellee,**

v.

**Rich COPE, Defendant/Appellant.**

**No. 107,126.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 29, 2009.

Patrick H. McCord, Joel A. LaCourse, Stoops & LaCourse, PLLC, Tulsa, OK, for Plaintiff/Appellee.

Keith A. Jones, Tulsa, OK, for Defendant/Appellant.

DOUG GABBARD II, Presiding Judge.

¶1 Defendant/Appellant, Rich Cope (Father), appeals a summary judgment granted in favor of Plaintiff/Appellee, Terri L. Cope (Mother), determining that the parties' oral agreement waiving Mother's right to child support from Father was void and unenforceable, and awarding Mother a judgment against Father in the amount of $97,401.50 plus interest. After review, we reverse and remand with directions.

## BACKGROUND

¶2 The parties married, had two children, and divorced in 1988. Mother was awarded custody, and Father was ordered to pay child support. Shortly thereafter, the parties began a protracted dispute regarding custody, visitation, and support. During the succeeding years, each party filed pleadings to modify the decree and to charge the other with contempt.

¶3 In December 2004, Mother filed an application for contempt citation, alleging that Father had wilfully failed to pay child support in accordance with a modification order entered in 2000. On March 1, 2005, she filed a motion to modify child support and a request for wage assignment, requesting a recalculation of child support and a reinstatement of a previous wage assignment on Father's paycheck.[1] Father's defense was that Mother had agreed to waive his payment of child support. Both parties filed motions for summary judgment.

¶4 In her motion for summary judgment, Mother asserts that there is a valid court order requiring Father to pay child support. However, she admits that, in August 2001, she told Father "if you just leave us alone, and don't exercise your visitation with the children, you do not have to pay us child support." Nevertheless, she asserts that this agreement is unenforceable because it "was entirely an oral agreement by and between the parties [and] was never reduced to writing or entered and agreed to before the Court." She also asserts that a June 18, 2001, court order which struck all pending motions and suspended a wage assignment on Father's income was not part of any agreement to waive child support, but was only entered to bring the accounts into balance after Father overpaid Mother for daycare expenses.[2]

¶5 Father asserts the June 2001 court order was entered pursuant to the oral

---

1. Although Mother did not request a child support arrearage judgment in either the application for contempt or motion to modify, her motion for summary judgment requested she be given a "judgment and applicable arrearage and interest."

2. According to a filing, the June 18, 2001, court order states in part that "[t]he parties have agreed that until further notice the Wage Assignment shall be suspended. The parties have agreed that until circumstances and economic changes occur relating to an adjustment of child support, that the Wage Assignment shall remain in suspension."

agreement. He notes that Mother set forth the agreement in writing in two subsequent letters which he attached to his motion for summary judgment.[3] Father asserts that this agreement is enforceable and has been fully completed. He also asserts that it would be inequitable to grant Mother child support after such a long period of time has passed and after his right to visitation is no longer enforceable because his children are now adults.

¶ 6 The trial court granted summary judgment to Mother, held that the parties' agreement was void and unenforceable as contrary to public policy, recalculated child support effective March 1, 2005 (the date Mother filed her motion), and granted Mother an arrearage judgment of $97,401.50, plus interest. Father appeals.

## STANDARD OF REVIEW

¶ 7 Summary judgment may be granted when there is no substantial controversy as to any material fact, and where reasonable persons could not reach different conclusions from the facts. Rule 13(a), Rules for District Courts, 12 O.S. Supp.2008, ch.2, app.; *Ind. Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59–60. We review a grant of summary judgment *de novo*. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, an appellate court has plenary, independent, and non-deferential authority to determine whether the trial court erred in its legal rulings. *Id.*[4]

## ANALYSIS

¶ 8 The validity and legal effect of mutual agreements to waive child support have been litigated for a substantial number of years.

¶ 9 In *State Department of Human Services ex rel. K.A.G. v. T.D.G.*, 1993 OK 126, 861 P.2d 990, the Oklahoma Department of Human Services (DHS) filed an action to establish the paternity of a minor child born out of wedlock, and to order the payment of child support by the putative father.[5] The father filed a motion to dismiss based upon a 1979 written agreement with the mother whereby he released any visitation or other rights to the child in exchange for the mother's agreement to never file a paternity action or seek child support from him. The trial court granted a dismissal, but the Supreme Court reversed, stating:

> Public policy prohibits a parent's contracting away *a child's right to support*. A contract attempting permanently to deprive a child of support is void as against public policy. Such an agreement does not prevent Human Services from bringing a paternity action and establishing support obligations ...

*Id.* at ¶ 12, 861 P.2d at 995 (emphasis added; footnote omitted).

¶ 10 Although *K.A.G.* was limited to a parent's ability to contract away *the child's right to child support*, several divisions of this Court later held that the rule also extended to a parent's ability to contract away *his or*

3. Both letters were dated October 10, 2001. One letter was addressed to Father's attorney and stated in part: "In response to your letter dated September 20, 2001, the court order filed this last June 2001 reflects the only thing I agreed to with Richy. That being all contact between Richy and the children would cease along with all child support or any monies from Richy. No more no less than that." The other letter was addressed to Father and stated in part: "I am reminding you of the agreement and temporary court order filed in June 2001, stating that there shall be no visitation or efforts of contact made by you, nor child support or monies for any purpose to be paid to us until further legal action is taken. The children and I have honored this court order with no efforts of contacting you or requesting money from you not even once and with no intentions of ever doing so.... You made a decision to step out of their lives completely and they are well adjusted and happy with your decision. *DO NOT MAKE FURTHER ATTEMPTS TO CONTACT THEM!* ... Still, should you choose to ignore what I have said to you and continue to make contact with them we will expect the child support to resume *IMMEDIATELY!*"

4. Because neither party disputes the essential terms of the mutual agreement regarding child support and visitation, and the primary issue is the validity and effect of such action, our standard of review is *de novo*, not whether the trial court order is supported by the clear weight of the evidence.

5. The mother had applied for and received Aid to Families with Dependent Children, and had, pursuant to statute, executed an assignment of her right to collect child support to DHS.

*her own right to collect child support. See, for example, Hensley v. Hensley,* 2000 OK CIV APP 34, 1 P.3d 446; *Martin v. Brock,* 2001 OK CIV APP 145, 55 P.3d 1095.

¶ 11 In *Hedges v. Hedges,* 2002 OK 92, 66 P.3d 364, the Supreme Court disagreed with this analysis. There, a mother brought contempt proceedings against her ex-spouse for failing to pay court-ordered child support, and the father asserted equitable defenses and reliance upon a previous oral agreement wherein the mother allegedly waived payment of child support in exchange for the father paying the family's bills and not asking for the return of certain personal items. Referring to what is now 43 O.S. Supp.2008 § 112(A)(3), the Court stated:

> While the obligor-obligee parents can modify past-due and unpaid installments by agreement, future support is subject only to *prospective modification by the court.* In sum, the outer reach of the parties' **mutual agreement** is the reduction (or relinquishment) of **matured installments,** while the outer limit of **statutory power** confines the court's authority to reducing (or modifying) **unmatured installments.**

*Id.* at ¶ 18, 66 P.3d at 372. Essentially, the *Hedges* court found that post-decree mutual agreements to waive past child support are valid, but post-decree agreements to waive future installments of child support are not enforceable. Nevertheless, the Supreme Court then reversed and remanded the case to resolve a factual dispute regarding the father's defense of estoppel.[6]

▋ ¶ 12 The instant case presents similar facts. The parties' 2001 mutual agreement regarding the future payment of child support and visitation is clearly unenforceable. However, Father asserted the defense of equitable estoppel as a bar to Mother's claim for unpaid support, and the trial court erred in not considering it.

6. *Holleyman v. Holleyman,* 2003 OK 48, 78 P.3d 921, is consistent with the *Hedges* rule that parties may mutually agree to waive matured installments of child support, but only the trial court may establish or modify unmatured installments. In *Holleyman,* the parties made an agreement regarding future support which was incorporat-

▋ ¶ 13 Equitable estoppel is employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage. *First State Bank v. Diamond Plastics Corp.,* 1995 OK 21, ¶ 39, 891 P.2d 1262, 1272. It holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who has in good faith, relied upon that representation or position. *Oxley v. Gen. Atl. Res., Inc.,* 1997 OK 46, ¶ 20, 936 P.2d 943, 947. An example is *Merritt v. Merritt,* 2003 OK 68, 73 P.3d 878, where the Supreme Court found that the mother's failure to pay child support was inexcusable, but determined that estoppel barred the father's action to collect unpaid support because his delay in doing so resulted in Social Security benefits that could have been paid to him for child support being paid instead to their now adult child.

¶ 14 In the present case, Father and Mother made a mutual agreement in 2001 wherein each gave up important rights. Father agreed to give up his right to visit his children, and Mother gave up her right to receive child support. Father complied with the agreement, both children are now adults, and it is inequitable for Mother to be allowed to collect child support which was unpaid as a direct result of her representations and actions. We find that equitable estoppel bars her action.

### CONCLUSION

¶ 15 For all these reasons, the summary judgment in favor of Mother is hereby reversed and remanded with directions that summary judgment be entered in favor of Father.

¶ 16 REVERSED AND REMANDED WITH DIRECTIONS.

FISCHER, J., concurs, and RAPP, J., specially concurs.

ed into the consent divorce decree, in much the same manner as parties agree to a deviation from the child support guidelines. In contrast, the present case involves an post-decree agreement which was not included in any consent decree or modification order.

RAPP, J., specially concurring.

¶ 1 I fully concur with the equitable estoppel concept advanced by the Majority. This concept provides a sufficient basis to reverse the trial court and cause judgment to be entered for Father.

¶ 2 However, I also assert that the contract is enforceable under the facts of this case. Both parties entered into an agreement in good faith. Over the years, the agreement was fully executed. Mother received the benefit of her bargain, the exclusive possession and enjoyment of the children and, for her own reasons, the denial to the children of the monetary benefit of child support and enjoyment of Father's companionship. Father did not pay child support, but at a cost of the irrevocable loss of the joy and love of his children in the bargain. Father can never recover these fleeting childhood moments, nor can they be recreated. Mother received the entire benefit of her contract with Father. Now, she wants that consideration which she relinquished, that is the unpaid child support for her children when they were minors, but who are now adults. It is most interesting to note the adult children are not the plaintiffs here. Furthermore, Mother's request is wholly inconsistent with the intent of the parties' original agreement. I note that if this Court were to deny enforcement of this contract, now that the children are adults, such would be tantamount to condoning deceit and fraud. It would also require payment of monies to persons not eligible under the child support statutes. A denial would also ignore the loss Father has endured because he honored and performed the oral contract to his detriment. Further, recognition of the contract is not inconsistent with *Hedges,* where denial of the contract as to future support involved children who were still minors. For these reasons, I would also include judgment for Father on the contract entered into by the parties.