M. B. CRUMLEY, Plaintiff in Error,

v.

Donald L. SMITH, Elaine Smith now Van DeMhenn, and the unknown heirs, executors, administrators, devisees, trustees and assigns, of Beecher L. Smith, deceased, and C. M. Nelson, Defendants in Error.

No. 40562.

Supreme Court of Oklahoma.

Oct. 6, 1964.

Rehearing Denied Nov. 24, 1964.

Stevenson, Huser & Huser, Holdenville, for plaintiff in error.

Bob E. Bennett, Ada, for defendants in error.

BERRY, Justice.

By appeal upon the original record there is presented the question of the correctness of the trial court's judgment denying relief in an action brought to cancel a warranty deed executed by plaintiff, M. B. Crumley, on November 10, 1959, conveying the land involved to plaintiff's son, Beecher Smith, father of defendants Donald L. and Elaine Smith, and reserving a life estate to the plaintiff, grantor.

So far as pertinent to the present inquiry, the action arose out of the following matters alleged in the petition: On February 13, 1956, Beecher L. and Mary Smith, his wife, borrowed $3500.00 from D. A. Crumley, husband of plaintiff. Contemporaneously, they executed a note secured by a mortgage upon the described 60 acres of land in Pontotoc County which was purchased with the loan proceeds. D. A. Crumley, the mortgagee, died testate March 14, 1957, leaving as heirs four adult daughters by a previous marriage and this plaintiff. The will was admitted to probate and plaintiff elected to take by succession, thereby becoming vested with a one-third interest in the note and mortgage which were in default at the time of D. A. Crumley's death. The executor brought foreclosure proceedings against the mortgagors (Beecher L. and Mary Smith) and secured judgment in the amount of $4,259.25, plus costs, attorney's fees and interest from date of judgment. The judgment remained unsatisfied except or $417.90 credited from sale of the mortgagors' personal property, and the executor caused execution and order of sale to issue.

Thereafter plaintiff satisfied the judgment, using money inherited from her husband's estate, by paying deceased's daughters two thirds of the purchase price of the judgment. Plaintiff discharged the judgment to avoid loss of the land by foreclosure, and as consideration therefor Beecher L. Smith and wife executed a warranty deed to plaintiff on June 29, 1959. It was alleged further that the Beecher L. Smiths lived with plaintiff, and while dissipating her estate, harassed and intimidated her by demands, threats and actual physical violence, causing her to be mortally afraid, and resulting in her acceding to their demands by conveying the property to them on November 10, 1959, as the result of fear, intimidation, duress and undue influence. Subsequent to this conveyance both of the Smiths died leaving the named defendants, Donald L. and Elaine Smith, as their heirs at law. The defendant Nelson was made a party defendant by virtue of assignment of the funeral director's claim based upon a mortgage executed by the defendant heirs. After filing of this action defendant Nelson filed release of such mortgage and disclaimed any interest in the property involved.

The petition, after alleging the matters above summarized, prayed judgment canceling the deed in question, quieting title and subrogation of plaintiff to all right, title and interest of deceased's (Crumley) estate in the note and mortgage which plaintiff had discharged.

Defendants answered by general denial and the affirmative pleas of laches and the statute of limitations. The issues were formed by plaintiff's reply in form of a general denial.

The case was heard December 17, 1962, at which time plaintiff requested written findings of fact and conclusions of law. The trial court ordered both parties to submit written findings and conclusions. The judgment appealed from was rendered by

the trial court pro facto upon the findings and conclusions submitted by defendants.

The evidence disclosed plaintiff was 81 years of age at the time the questioned deed was executed. About two months after the property was conveyed to plaintiff, her son, Beecher, assaulted and beat plaintiff with a chain because of her refusal to reconvey the property. Charges of aggravated assault were filed in the county court but the case never was tried and eventually was dismissed. In a sanity proceeding against Beecher the plaintiff denied occurrence of the assault. However, during trial of the present case plaintiff testified she received nothing for executing the deed but "just had to" because Beecher and wife were living with her and she was afraid not to sign the deed for fear they would "get away" with her if she refused. Although Beecher and his wife were living with her, plaintiff bought most of the groceries and helped with the housework while Beecher did nothing except odd jobs. Both Beecher and his wife were deceased at the time of trial, and Beecher was living with plaintiff when he died. Plaintiff did not want the property to go to Beecher but wanted anything she had divided equally between her children.

The evidence as to Beecher Smith's bad reputation as a dangerous citizen and the events resulting in filing of criminal assault charges which eventually were dismissed, was corroborated by the lawyer who was county attorney at the time and and by the county judge. There was evidence that plaintiff visited the county attorney's office frequently during 1959–60 to make complaint about Beecher's conduct, but plaintiff never returned to the office following Beecher's demise.

A very reputable attorney who had represented plaintiff in handling her deceased husband's estate, testified to transactions involving the land and that plaintiff paid off the note and mortgage out of fear of losing her life. During plaintiff's many office visits Beecher always accompanied her and it was impossible to discuss matters privately; in the course of their visits the attorney learned of the assault; plaintiff quit having this attorney handle her affairs because he declined to draft a will; he advised plaintiff to file charges against her son. There was other evidence bearing upon plaintiff's redemption of the property and the value of the property as reflected upon this basis. The only direct evidence of value was found in testimony concerning some conversation between plaintiff's lawyer and defendants' attorney, indicating that a sale of the property for $4500.00 might be made.

Defendants' evidence was elicited from the attorney, who prepared the deed conveying the property to Beecher L. Smith, and the lady who was his secretary during the period of negotiations which culminated in the conveyance and who took plaintiff's acknowledgment to the instrument. Her testimony was that plaintiff visited the law office frequently, and neither her physical appearance, actions nor conduct gave indication that she was afraid; plaintiff came to the office several times wanting to convey the land to her son, and it was explained to her that the manner in which the deed was drawn would allow her to live on the property until her demise. The deed was executed only after it had been explained to plaintiff several times and then was executed and acknowledged in the office.

Plaintiff's lawyer testified to having become acquainted with plaintiff in 1959 and that he had drawn the questioned deed after several conferences; plaintiff told him she wanted to leave the property to Beecher because it was his originally and she had helped him out of debt; plaintiff first had wanted to make a will but was prevailed upon to make a deed and reserve a life estate because this was to her best interests; lengthy negotiations led up to execution of the deed because he wanted her to understand the transaction; Beecher accompanied plaintiff to the office when the deed was signed. The witness knew of the assault charges and had represented Beecher Smith during a sanity proceeding held for the purpose of committing him to a mental hospital

for observation, and at that time plaintiff denied that Beecher had assaulted her and this ended the proceeding; the witness knew that Beecher had trouble with the rest of the family; it never occurred to him particularly that Beecher had anything to do with the making of the conveyance but he had some hesitancy about the matter since plaintiff was 81 years old.

By way of rebuttal, plaintiff testified Beecher had assaulted her and not another son as was brought out by defendants. Plaintiff bought two thirds of the groceries while the Smiths lived with her, although infrequently Mary would buy something. Plaintiff had a few thousand dollars after distribution of her husband's estate but it was all expended by the time Beecher died, and all she had left was a small oil check ($17.00 per month). Plaintiff positively testified the only reason she executed the conveyance was because she was afraid not to do so.

The findings of fact and conclusions of law submitted by defendants, and adopted by the trial court, in substance reflected that the Smiths conveyed the land to plaintiff, who thereafter deeded same to the Smiths but with reservation of a life estate. Upon execution of the deed plaintiff stated she desired to leave some of her estate to them because they lived with and took care of her, did most of the household chores and Mary did most of the cooking; that plaintiff had inquired about making a will but was advised to convey the property and reserve a life estate; the deed was executed in accord with this advice; there was no evidence of fraud, force, duress, threats, intimidation or undue influence involved in the execution of the deed executed by plaintiff of her free will with the intent of awarding Beecher property out of her estate; the deed was executed for consideration since plaintiff bought the property at less than full value and retained a life estate therein, and conveyed the property to the grantees because they lived with and cared for plaintiff and because love and affection was present in the execution of the deed.

Based upon the foregoing, the trial court concluded as a matter of law that plaintiff conveyed all of her interest in the property except for the retained life estate and that such deed was executed for adequate consideration received by the grantor. Further, plaintiff's claim was barred by the statute of limitations, and also by reason of laches inhering in failure to assert her claim prior to a change in condition prejudicial to defendants' rights herein; the defendants, as heirs of Beecher Smith, deceased, owned all right, title and interest in the property except the life estate retained by plaintiff. Judgment was rendered by the trial court in favor of defendants in conformity with the findings and conclusions above noted. Motion for new trial was overruled and this appeal resulted from the trial court's actions.

■ Plaintiff submits seven propositions in support of her claim for reversal. Defendants rely upon six propositions in support of the correctness of the judgment appealed from. Defendants' third proposition is not supported by citation of authority, while the fifth proposition offers neither argument nor supporting authority, and thus do not merit separate consideration. Reed v. State Election Board, Okl., 369 P.2d 156. However, determination of the appeal upon the basis of questions hereinafter considered sufficiently disposes of the questions sought to be presented.

From the findings of fact and conclusions of law mentioned above, it may be observed that three questions of law, together with determination of the clear weight of the evidence to support the trial court's judgment, will be dispositive of the controlling issues. The judgment was based upon the trial court's findings that: (1) plaintiff's action was barred by the statute of limitations; (2) plaintiff was guilty of laches in failing to assert her claim; and (3) the grantor received adequate consideration for the deed. Each of these conclusions of law must be considered separately in relation to the propriety of this judgment.

■ The trial court's conclusion was predicated upon the finding, under the evi-

dence, that all the circumstances leading up to and surrounding execution of the deed were not part of plaintiff's case, since fraud, force, intimidation and duress were relied upon as grounds for cancellation of the deed. Apparently this conclusion was based upon the theory, as announced in some earlier decisions, that plaintiff's claim was solely for rescission of the deed by application of equitable principles. Hence, being an action for relief arising out of fraud, the two-year limitation contained under 12 O.S.1961, § 95(3) controlled and plaintiff's cause of action was barred. See Warner v. Coleman et al., 107 Okl. 292, 231 P. 1053, 118 A.L.R. 204. The trial court erred in this application of the law for the reason hereafter discussed.

The plaintiff's action for cancellation of the deed was not based solely upon the prayer for application of equitable relief arising from the fraud and duress alleged in the petition. The petition alleged the deed was obtained by fraud, duress and undue influence, *and separately alleged same was void, being executed by the grantor without consideration.* Recently, in Taylor, Adm. v. Clark et al., Okl., 380 P.2d 250, we held that it was error to sustain a demurrer to plaintiff's petition seeking cancellation of deeds where the cause of action relied upon lack of consideration as well as fraud in obtaining such deeds, upon the ground the action for cancellation of the instruments had not been commenced within two years following execution thereof. At p. 253 of that decision we stated that if plaintiff's cause of action for the cancellation of a deed appears to have arisen wholly, or in part, from failure or lack of consideration, then only the five-year limitation contained in 12 O.S.1961, § 95(7) can be applied to defeat the action. The trial court erred as a matter of law in holding plaintiff's cause of action barred under the two-year statute, supra. This conclusion avoids necessity for discussion of related questions.

The second consideration involves the propriety of the trial court's conclusion that plaintiff's action was barred by laches, for failure to assert same prior to a change in condition prejudicial to defendants. No finding of facts to support this conclusion of law was made by the court. Nothing in the record points to any circumstance showing that plaintiff's failure to act during his lifetime lulled her grantee, Beecher Smith, into a sense of security to his disadvantage, or that anything occurred which resulted in his changing his position. The deed was executed November 10, 1959, and thereafter plaintiff and the Smiths continued living together in the property until Beecher's death in April, 1961. The present action was instituted and filed in December, 1961.

The basis and legal elements required for establishing the existence of laches have been announced many times. And, we have consistently stated that whether a claim is to be considered as barred by laches must be determined by the facts in each case according to right and justice, and is not determinable by lapse of time alone, but resulting damage to the other party must be shown to arise therefrom. May v. Archer, Okl., 302 P.2d 768; and Lumm v. Colliard, Okl., 317 P.2d 273.

The undisputed testimony established that plaintiff had been physically assaulted by Beecher prior to execution of the deed and that she stood in constant fear of threats, harassment and physical violence. There was evidence that Beecher physically threatened violence against plaintiff subsequent to execution of the deed, and that her frequent complaints concerning his threats against her ended upon his death. The evidence fairly and clearly reflects that plaintiff was afraid of her son for good reason, and lived in an atmosphere of fear and domination during all the period they lived together and until his death. We consider the argument that plaintiff could not have been guilty of laches while subjected to fear and intimidation well taken.

Nor can it be said that defendants were prejudiced as innocent parties by lapse of eight months' time before this action was

filed. Defendants had no interest in the property except as heirs of Beecher Smith to succeed to whatever interest or title was confirmed in him and set over to them by appropriate order of the proper court. The single circumstance that they executed a purported mortgage upon the property as a means of defraying the expenses of burial, which they were charged by law to discharge in any event, cannot serve to enhance their claim to real property, the title to which had been acquired by their decedent under the questioned conveyance. The trial court's finding and conclusion that plaintiff's claim was barred by reason of laches was improper under this record.

Whether plaintiff's cause of action was barred by laches must be determined upon the facts and circumstances disclosed, according to right and justice. In legal significance laches is not mere delay but must constitute delay which works a disadvantage to defendants. The facts and circumstances disclosed by this record do not establish that plaintiff was guilty of laches in the bringing of this action. May, Adm. v. Archer et al., supra.

■ The findings of fact to support the conclusion of law that the deed was executed for adequate consideration are contrary to the clear weight of the evidence. Although true the Smiths resided with her, the evidence does not reflect that they cooked for and took care of plaintiff and did most of the chores. The only evidence in the record is more susceptible of the conclusion that plaintiff furnished the Smiths a home, purchased the bulk of the groceries and carried out her own share of the usual chores while Beecher did nothing except odd jobs. The finding that plaintiff was desirous of leaving part of her estate to Beecher and therefore deeded the property to him, is negated by her own testimony that if she had only a dollar she would want it to be divided among her children.

The conclusion that plaintiff bought the property at less than full value is not supported by evidence. The only evidence in the record relating to the value was the testimony of plaintiff's counsel to the effect defendants' attorney expressed the belief that he could get $4500.00 for the property. The trial court undoubtedly gave undue importance to the fact that plaintiff paid the other heirs $3,194.00 for their two-thirds interest, while still retaining a one-third interest. Upon the basis of the heirs' interest, the value of plaintiff's inherited share of the property was $1,597.00, which amount she could have received had the property been sold under execution sale, rather than plaintiff investing her own inheritance for redemption from the lien of the judgment. Plaintiff owed no legal duty to discharge the judgment. She was not a party to such proceedings and had an absolute right to take title to the property by satisfying the balance due upon the judgment just as a stranger would have had under the circumstances. Whatever amount plaintiff expended in purchase of the property was not a matter of inquiry or concern by the trial court in considering whether any consideration passed to the grantor in return for her executing the conveyance herein involved.

The third inquiry concerns the correctness of the trial court's finding and conclusion of law that the deed in question was executed for adequate consideration received by the grantor. Certain evidence bearing upon this issue has been discussed heretofore. It is uncontroverted that plaintiff received no monetary consideration for her deed. Likewise, the evidence fully reflects that the trial court's finding that Beecher Smith and wife lived with and cared for plaintiff is not borne out by the evidence. Although true they lived with plaintiff, other evidence fairly leads to the conclusion that plaintiff expended her meager estate in providing them a home.

■■ Without question, love and affection provide valid consideration to support a conveyance. Higgins v. Pipkin, Okl., 360 P.2d 231. We have often pointed out, however, that the general rule relative to determining the validity of a deed from

parent to child is that existence of fraud or undue influence is determinable upon the facts of the particular case. Wills v. Dissing, Okl., 356 P.2d 339; and Higgins v. Pipkin, supra. The love and affection necessary to supply consideration to support a conveyance may be found in the normal maternal love for the offspring but only when the relationship is untainted by family relationships which give rise to situations which permit fraud, undue influence, fear or intimidation to be present.

The necessary love and affection herein must be found, if at all, in the mere fact of parenthood coupled with the expressed desire to leave some of her estate to Beecher Smith. But these circumstances necessarily must be measured against other evidence disclosing that: plaintiff desired everything she owned to be divided among her children; the deed in question was executed immediately after physical abuse had been exerted upon plaintiff; execution thereof followed by a period when opportunity and the existence of complete intimidation reasonably are shown. The evidence that the transaction was explained carefully to plaintiff and that she expressed a desire to complete same must be considered with regard to the fact this occurred during existence of circumstances reasonably and fairly supporting the conclusion that such expressed desire most probably resulted from intimidation and fear under which plaintiff labored.

The present appeal presents a matter of equitable cognizance. In such cases this Court will examine the record and weigh the evidence. And, where the trial court's judgment is against the clear weight of the evidence, the judgment will be reversed. This review has been made carefully and at length in this cause, and now compels the conclusion that the trial court's findings of fact are not supported by the evidence. And, the judgment rendered is contrary to the clear weight of the evidence and incorrect as a matter of law. In such cases the rule to be applied is that the trial court's judgment will be reversed

and this Court will render, or cause to be rendered, the judgment that should have been rendered in the trial court. Jeffers v. Edge, Okl., 295 P.2d 787; Marshall v. Amos, Okl., 300 P.2d 900; Dwelle v. Greenshields, Okl., 305 P.2d 1038.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment granting plaintiff the relief sought.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.