2000 OK CIV APP 92

Pamela Diane SWEARINGEN,
Plaintiff/Appellee

v.

Charles Gregory SWEARINGEN,
Defendant/Appellant

No. 93006.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Aug. 11, 2000.

Terry A. Baulch, Ada, Oklahoma, for Plaintiff/Appellee,

James R. Neal, Ada, Oklahoma, for Defendant/Appellant.

## OPINION

ADAMS, J:

¶1 On February 28, 1990, the trial court filed a Decree of Divorce dissolving the marital bonds between Pamela Swearingen (Mother) and Charles Swearingen (Father). According to the Decree, Father not only failed to answer Mother's petition but did not appear at the hearing. The Decree placed custody of the two minor children, then approximately 11 and 9, with Mother. With regard to child support, the Decree provided Father "should pay child support for said children *according to the guidelines set by the State of Oklahoma,* in the amount of $160.00 per month *per child,* during the minority of said children or until the further order of this Court." (Emphasis added). Attached to the Decree was a Child Support Computation form. This form, consisting of three pages, was signed by the judge and stated the "PAYOR'S TOTAL SUPPORT OBLIGATION" and "NET CHILD SUPPORT (Amount Payor Pays Payee)" to be "$160.00." The form stated the number of children as "2," and on the second page, the phrase "Guidelines were followed" was preceded by a handwritten "x."

¶2 Approximately nine years later, Father filed an APPLICATION FOR ORDER NUNC PRO TUNC, in which he alleged the portion of the Decree setting child support at $160.00 "per child" was a scrivener's error, noting the court's specific finding that the child support was "according to the guidelines set by the State of Oklahoma" and the attached form computing his *total* net support at $160.00. Mother responded, arguing that the trial court intentionally deviated from the guidelines and that it was too late to attack that decision. Mother also argued that Father's application was, in effect, an improper request for retroactive modification of child support and that Father's application was barred by laches. After hearing argument from the parties, the trial court allowed additional time for briefing but indicated that "the Court shall rule on the briefs, unless a party requests a formal hearing." Although both parties filed supporting briefs, neither party requested a formal hearing. Accordingly, the trial court ruled on Father's appli-

cation based upon "the briefs submitted" and denied his application. Father appeals.

¶3 Father argues that his complaint about the Decree was properly addressed by means of an order *nunc pro tunc.* We agree. As noted in *Stork v. Stork,* 1995 OK 61, ¶7, 898 P.2d 732, 736-737,

> Orders *nunc pro tunc* are designed neither to bring into the record what a court *might or should have done* nor what it *might or should have intended to do.* The function of a *nunc pro tunc* entry is to amend a judgment to make it *speak the truth about what actually transpired* or *was considered* and adjudged. *Nunc pro tunc* relief is limited to supplying *inadvertent clerical omission* and correcting *facial mistakes* in recording judicial acts that actually took place. In short, a *nunc pro tunc* order *can and will* place of record what was *actually decided* by the court *but was incorrectly recorded.* The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment.

(Footnotes omitted; emphasis in original).

¶4 Father premised his application on the contention that the use of the term "per child" was the result of a scrivener's error. His argument is supported by the entries made by the trial court on the attached Child Support Computation form. The face of the judgment roll specifically refutes Mother's contention that the trial court actually deviated from the guidelines. The Decree reflects the trial court followed the guidelines, and we can only conclude that the "per child" language in the Decree resulted from the error of the person who drafted the Decree after the trial court had announced its decision. Unless one of the other defenses raised by Mother to Father's application is appropriate under these circumstances, Father was entitled to the requested relief.

¶5 Mother argues that the rule prohibiting retroactive modification of child support, *see* 43 O.S.1991 112(A)(3), bars an order *nunc pro tunc* in this case. We disagree. An order *nunc pro tunc* correcting the scrivener's error in the Decree does not in any

way "modify" Father's true child support obligation. It merely causes the record of the trial court's order setting that obligation to accurately reflect the obligation determined by the trial court in the first instance.

¶ 6 Finally, Mother argues Father's delay in bringing this application should bar any relief on the basis of laches. Laches involves an unreasonable delay by one party in the enforcement of a claim where that delay causes another party to be prejudiced as a result of the delay. *Olansen v. Texaco, Inc.,* 1978 OK 139, 587 P.2d 976. In legal significance, it is not merely delay, but a delay that causes a disadvantage to another. *Marshall v. Amos,* 1968 OK 86, 442 P.2d 500. "The party invoking the defense of laches must prove that it suffered some irreparable damage or loss because of a change of conditions in relying on the inaction and indifference of the other party." *Clark v. Unknown Heirs of Osborn,* 1989 OK 145, ¶ 4, 782 P.2d 1384, 1386.

¶ 7 Mother has not demonstrated how she has been prejudiced by Father's *delay* in requesting the *nunc pro tunc* correction of the Decree. Certainly, Mother's rights are affected by the correction, *i.e.,* Father's unpaid child support obligation will be smaller.[1] However, she would have suffered the same reduction if Father had brought his applica-

tion sooner. On this record, laches does not apply.

¶ 8 The face of the judgment roll is consistent only with Father's argument that the drafter of the Decree made a clerical error in causing it to read so that Father's child support obligation would be $160.00 per child per month rather than a total of $160.00 per month as indicated on the Child Support Guideline Computation form attached to the Decree and which contained a finding that the trial court was following the guidelines. The trial court erred in denying Father's request for a *nunc pro tunc* correction of the Decree to make it reflect the judgment that was actually entered. The trial court's order is reversed, and the case is remanded for further proceedings consistent with this opinion.

¶ 9 **REVERSED AND REMANDED**

¶ 10 HANSEN, V.C.J., and JOPLIN, J., concur.

---

1. According to Mother, Father has paid little, if any, child support over the last nine years.