2002 OK 92

**Joan F. HEDGES, now Phillips,
Plaintiff–Appellant,**

v.

**Edward Lane HEDGES,
Defendant–Appellee.**

No. 96,030.

Supreme Court of Oklahoma.

Nov. 26, 2002.

Rehearing Denied Feb. 11, 2003.

Barry K. Roberts, Norman, Oklahoma, James M. Levine, Oklahoma City, Oklahoma, for Appellant.

Jon L. Hester, Scott A. Hester, Oklahoma City, Oklahoma, for Appellee.[1]

1. Identified herein are only those counsel for the parties whose names appear on the appellate briefs.

OPALA, J.

■ ¶1 Two issues are dispositive of this appeal: (a) Does Obligee–Mother's laches in prosecuting this postjudgment proceeding avail as an equitable defense against her quest for satisfaction of past-due and unpaid periodical installments of a child-support obligation? and (b) If laches is not available, is the record clear that the trial court would have entered the post-divorce order for Obligor–Father solely on his statutory defense of agreement-based satisfaction of the entire obligation? We answer the first question in the negative. Because the trial court relied on *both laches and "waiver"*[2] in denying Mother's relief quest and we cannot, on this record, determine whether it would have predicated its order solely on Mother's agreement-based relinquishment of rights (if it had ruled out laches as unavailable), the cause stands remanded for reconsideration of *the latter defense alone*—that which rests on the parties' oral agreement.[3]

I

THE ANATOMY OF LITIGATION

¶2 Joan F. Hedges, now Joan F. Phillips (Mother), and Edward Lane Hedges (Father) were divorced on 13 April 1988. Three children were born of the marriage—JCH in 1973, BFH in 1977 and EMH in 1979. Father was directed to pay as child support a total of $684.00 per month. The children

reached majority in 1991, 1995 and 1997. On 19 June 2000 Mother brought contempt proceedings against Father for his failure to pay child support. She alleged a total arrearage with interest of $84,992.08.[4] Father interposed several affirmative defenses.[5]

■ ¶3 The trial court (a) *determined* that contempt was not an available enforcement remedy and *dismissed* the application for that relief,[6] (b) *recast* the proceeding into one for satisfaction of past-due and unpaid child-support obligation, (c) *found* that an "agreement existed between the parties" which "operated to preclude the mother from collecting all the child support that was ordered," (d) *concluded* that because of the "mother's waiver by oral agreement" and the length of time that had passed since the children had reached the age of majority, *laches* and *waiver* precluded her from "recovering any arrearage which may have existed as a matter of law" and (e) *denied* Mother's quest for relief, *resting its order* "upon the equitable defenses of laches and waiver."

¶4 Mother's appeal stands retained for this court's disposition.

II

THE ARGUMENTS ON APPEAL

¶5 Mother (appellant) argues on appeal that the trial court should have applied the

2. The parties and the trial court characterize Father's defense as a "waiver." We view the essence of that defense as invoking a *statutory agreement-based* reduction (or relinquishment) of the decreed child-support liability. *See* Part V(C) *infra.* **For the pertinent provisions in force at the time of the decree's entry,** *see* the terms of *12 O.S.Supp.1987 § 1277* (renumbered as *43 O.S.Supp.1989 § 112* ), *infra* note 33.

3. Today's opinion deals solely with a parent's right to enforce decreed child support against another parent **after the children have reached majority.** The child's own right to support recovery is not addressed. As the court made clear in *State Dept. of Human Services ex rel. K.A.G. v. T.D.G.,* 1993 OK 126, ¶10, 861 P.2d 990, 994–95, **no parent may,** through settlement, agreement, or otherwise, **compromise the child's right to enforce a support obligation against its parent.**

4. An exhibit to Mother's application indicates that (a) the total amount of decreed child support

was $82,080.00, (b) Father had paid $29,120.54, (c) interest of $32,032.58 had accumulated as of 15 June 2000, and (d) Father owes an accumulated balance of $84,992.08. At trial Mother's counsel moved to amend the exhibit by adding $2,713.37 in interest.

5. As defenses against Mother's satisfaction quest *Father alleged* the doctrines of laches or acquiescence, waiver, equal protection and due process invasions, equitable credit, miscomputation of arrearage and unclean hands.

6. The trial court correctly dismissed the contempt application. Once a child attains majority, the child-support obligation is no longer enforceable by contempt proceedings. *Reynolds v. Reynolds,* 1943 OK 133, ¶6, 137 P.2d 914, 916–17. Mother does not, on appeal, claim error in her contempt application's dismissal.

teachings of *Aguero v. Aguero*[7] and *Cowan v. Cowan,*[8] two Court of Civil Appeals' opinions which pronounce that "equitable defenses" cannot be invoked to shield a parent from the legal consequences of child support's nonpayment. According to Mother, had the trial court based its decision on the *Aguero* and *Cowan* analyses[9] of this court's jurisprudence in *McNeal v. Robinson*[10] and *Thrash v. Thrash,*[11] it would have rejected Father's *equitable defenses* against Mother's quest. Mother, on the other hand, claims that she has *an undefeated right* to pursue past-due child support based on the explicit language of 43 O.S.Supp.1996 § 137.[12] If the court should agree that equitable defenses do not shield Father from his obligation to pay delinquent child support, she argues that we must confine our inquiry to the single question of what amount remains unaffected by the time bar.

¶ 6 Father counters that according to *Thrash,* "equitable defenses may be invoked to bar the recovery of delinquent child support payments."[13] He points out that the teachings of *Thrash* have not been departed from and that anything to the contrary in *Aguero* and *Cowan,* though perhaps persuasive, has no precedential value. Father also notes that *Swearingen v. Swearingen*[14] recognizes laches as an available defense in child-support enforcement proceedings. He argues that the equitable doctrines of "laches and waiver" should be upheld as a bar to Mother's recovery.

7. 1999 OK CIV APP 38, 976 P.2d 1088.

8. 2001 OK CIV APP 14, 19 P.3d 322.

9. In *Aguero, supra* note 7, COCA pronounced that the interposition of "equitable defenses" in a child-support recovery-of-arrearage proceeding is narrowly limited to the facts and to the teachings of *McNeal v. Robinson,* 1981 OK 43, 628 P.2d 358. In *McNeal* the court held the *equities* demanded that the noncustodial father receive credit against the child-support arrearage for the time he cared for the child in his home. The court opined it would have been inequitable to grant the mother a child-support "arrearage judgment" even though she had impliedly consented to an informal departure from the decreed child-support regime by making no complaint against it for at least one-and-a-half years. *Id.,* at ¶ 9, at 360. According to *Aguero,* nothing in post-*McNeal* jurisprudence indicates that *McNeal's* recognition of alternative compliance with a support order has been, or should be, broadly expanded to include the concept of "noncompliance due to laches, estoppel, waiver." *Id.* at ¶ 24, at 1094. Based on the teachings of *Aguero,* the statement in *Thrash v. Thrash,* 1991 OK 32, 809 P.2d 665, that in certain circumstances "equitable defenses may be invoked to bar the recovery of delinquent child support payments" is limited to the facts and holding of *McNeal. Aguero, supra* note 7, at ¶ 23, at 1093.

10. *Supra* note 9.

11. *Supra* note 9.

12. The pertinent terms of 43 O.S.Supp.*1996* § 137 were:
A. *Any payment or installment of child support ordered pursuant to any order, judgment, or decree of the district court* or administrative order of the Department of Human Services *is,* on and after the date it becomes past due, a judgment by operation of law. Such judgments for past due support shall:
1. Have the full force and effect of any other judgment of this state, including the ability to be enforced by any method available under the laws of this state to enforce and collect money judgments; and
\* \* \*
B. Such judgments shall be subject to an action for collection only after the child support obligor has been given notice and opportunity for a court or administrative hearing to determine the amount that is past due; provided, that if the obligor has been given a hearing in some other proceeding to contest the amount past due, the obligor shall not be entitled to another hearing to determine whether amounts are past due for the same time period.
C. *A child support judgment shall not become dormant for any purpose,* except that it shall cease to be a lien upon real property five (5) years from the date it is filed of record with the county clerk in the county where the property is located, unless execution is issued and filed within five (5) years from the date the judgment is determined or last execution on the judgment is issued as required by law.
1. Except as otherwise provided by court order, a judgment for past due child support shall be enforceable until paid in full.\* \* \* (emphasis added).
The 1998 and 2000 amendments do not affect this case *because they were enacted after the last child-support payment became past-due and owing.*

13. Father's brief quotes from *Thrash, supra* note 9 at 668.

14. 2000 OK CIV APP 92, 54 P.3d 120.

## III

### THE NATURE OF THIS POSTJUDGMENT PROCEEDING

■ ¶ 7 This postjudgment proceeding in a divorce case was brought to *ascertain the quantum* of arrearage, *i.e.*, adjudicated child support *then due and owing*, and to *enforce the declared obligation's satisfaction*. Father *plead* multiple defense theories, but appears to have later abandoned all but those tendered by the evidence adduced at trial [15]—(a) *laches* and (b) an *agreement-based reduction* (or relinquishment) *of a past-due, unpaid obligation.* Laches is the *only* equitable defense implicated here. This is so because the latter defense, characterized by the parties and by the trial court as "waiver," [16] is statutorily declared [17] and its effectiveness stands *limited to matured and unpaid installments* either reduced or relinquished by "mutual agreement." [18] We need not *globally* address ourselves today to the *continued invocability* of laches as an equitable defense in arrearage enforcement proceedings. This is so because, on this record, we hold that it does not avail in this case.[19]

---

**15.** We *assume* from Father's failure (a) to *tender below* any proof to support his other plead defenses (see *supra* note 5) and (b) to *press a counter-appeal* for reinstatement of any or some of them *that these came to be abandoned* in the course of trial-court proceedings.

**16.** *See supra* note 2.

**17.** *See* the pertinent terms of 12 O.S.Supp.1987 § 1277 (renumbered 43 O.S.Supp.1989 § 112), *infra* note 33.

**18.** *See* Part V *infra*.

**19.** *See* Part IV *infra*. Moreover, the common-law tradition in appellate judicature eschews across-the-board pronouncements. Changes in the common law are done in an incremental fashion, on a case-by-case basis. *See Myers v. Lashley*, 2002 OK 14, ¶ 17, 44 P.3d 553, 561.

**20.** *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 9, 50 P.3d 1132, 1138; *Sooner Federal Savings & Loan Ass'n v. Smoot*, 1995 OK

## IV

### THE TRIAL COURT'S ALLOWANCE OF THE LACHES DEFENSE FOR DELAYED PROSECUTION OF MOTHER'S QUEST IS CLEARLY CONTRARY TO THE WEIGHT OF THE EVIDENCE

■ ¶ 8 Laches is an equitable defense against the tardy prosecution of stale claims not yet barred by limitations.[20] Before a claim will be considered barred by laches it must be shown that (a) there has been an *unreasonable delay* in the commencement of proceedings to enforce the claim and that (b) by reason of this delay the defendant has been *materially prejudiced*. The party invoking the doctrine's benefit as an affirmative defense has the burden of proof and persuasion.[21] There is no bright-line rule for ascertaining when a claim becomes barred by laches or what delay is excusable.[22] Application of the doctrine is discretionary and varies with the facts and circumstances of each case.[23] The defendant is required to show more than mere lapse of time.[24] Equity must follow the law. It may not allow *legal* limitations to be abridged **unless** there are *equitable* considerations of a compelling nature *which demonstrate prejudice-dealing delay*.[25]

¶ 9 In support of his laches defense, Father argues that Mother's ten-year delay in

---

31, ¶ 21, 894 P.2d 1082, 1090; *Olansen v. Texaco, Inc.*, 1978 OK 139, ¶ 34, 587 P.2d 976, 985–86.

**21.** *Sooner Federal Savings, supra* note 20, at ¶ 21, at 1190; *Marshall v. Amos*, 1968 OK 86, ¶ 28, 442 P.2d 500, 506.

**22.** *Phelan v. Roberts*, 1938 OK 139, ¶ 14, 77 P.2d 9, 11; *Nickel v. Janda*, 1923 OK 944, ¶ 9, 242 P. 264, 266; *Harn v. Smith*, 1921 OK 328, ¶ 38, 204 P. 642, 651.

**23.** *Olansen, supra* note 20 at 985; *Marshall, supra* note 21 at ¶ 0 syl. 6, at 500.

**24.** *Crumley v. Smith*, 1964 OK 218, ¶ 20, 397 P.2d 119, 125.

**25.** *Bailey v. Murdock*, 1966 OK 185, ¶ 7, 421 P.2d 639, 643.

prosecuting her quest has caused a substantial amount of interest to accrue ($32,032.58) for a total child-support arrears of $82,080. He urges that he is put at a severe disadvantage and will be irreparably damaged if he were ordered to satisfy the full amount of the arrearage that is pressed. At the time of trial his gross annual income was $30,300. He argues that because of his age (he is in his 50's), he will never earn enough money to pay off the obligation and the large amount of interest that Mother has allowed to accrue during the years of her inaction and failure to enforce the unpaid child-support obligation.

¶ 10 Child-support proceedings are of equitable cognizance.[26] In suits of that class, a trial court's decree *will be set aside only if it is found to be clearly contrary to the weight of the evidence or to some governing principle of equity jurisprudence.*[27]

¶ 11 *The record here is grossly deficient.* Father's failure to pay the decreed child support in reliance on the alleged oral agreement with Mother and the *resulting accumulation of arrearage (with interest)* do not, in contemplation of law, constitute the prejudice that is necessary to support the defense of laches. Although as a result of Mother's delay he now owes a substantial amount of accrued interest, his proof does not demonstrate that the delayed institution of enforcement proceedings placed him in a far more detrimental or disadvantaged position. *It indicates only that he would now owe more money.*

¶ 12 Because there has been **no record showing of a material prejudice-dealing delay injurious** to Father's interest, we hold that Mother's quest for enforcement of unpaid child-support obligation is not barred by the equitable doctrine of laches.

**26.** *Thrash, supra* note 9 at ¶ 9, at 668.

**27.** A reviewing court will not disturb a trial court's equity decision absent abused discretion or a finding that it is clearly contrary to the weight of the evidence. *Johnson v. Johnson,* 1983 OK 117, ¶ 15, 674 P.2d 539, 544; *Kiddie v. Kiddie,* 1977 OK 69, ¶ 3, 563 P.2d 139, 140–41; *Peters v. Peters,* 1975 OK 114, ¶ 9, 539 P.2d 26, 27.

**28.** According to Father, their joint obligations included a mortgage on the house and various

V

## THE DEFENSE OF AN AGREEMENT–BASED REDUCTION (OR RELINQUISHMENT) OF CHILD–SUPPORT OBLIGATION IS STATUTORILY LIMITED TO MATURED (PAST–DUE) AND UNPAID INSTALLMENTS

### A.

### *Father's Agreement-based Defense*

¶ 13 Father argues that Mother "waived" her right to collect past-due and unpaid child support because of an *oral agreement* she made with him shortly *after the divorce petition was filed but before the decree's entry.* By its terms she is said to have agreed to accept fifty percent less than the amount reflected in the decree. According to his testimony Mother thought the amount to be decreed as child-support obligation was excessive. She allegedly agreed that if he would assume responsibility for all the bills and not ask for the return of any items she took out of the house she would accept as full satisfaction the reduced amount of child support.[28] This agreement was not incorporated in the decree.

¶ 14 Father also testified that *after his post-decree bankruptcy,*[29] Mother informed him that the mortgage company and a finance company sought a judgment against her. According to Father, she then agreed *to accept a lesser amount of child support* in return for his keeping her whereabouts unknown to process servers. He testified that arrearages began accruing in August of 1989 and that he stopped paying child support in 1995[30] because his second child had reached the age of majority. Father claimed that

bills totaling $11,000. Mother testified that their "joint bills" included a house mortgage, a $10,000 loan and a Sight–n–Sound bill ($800 or $900).

**29.** The record reveals that Father's bankruptcy petition was filed 9 December 1988.

**30.** Father later testified that he made his last child-support payment in January of 1997, a fact which was not reflected on Mother's exhibit.

Mother never pressed him for payment of any arrearages until she brought contempt proceedings in June of 2000, when the youngest child was 21 years old and the oldest 27. He argues Mother's silence and her inaction for such a long time show that she acquiesced in receiving lesser sums of support as well as evince that there was some understanding between the parties.

¶ 15 Mother disputes the existence of an oral agreement. She claims she neither agreed to reduced child support nor acquiesced (by silence or inaction) in accepting a lesser amount. According to Mother, she would occasionally contact Father about the reduced payments, but after her youngest son, EMH, reached the age of 19, she no longer tried to contact him about child support. She testified that several years before EMH's 19th birthday, she approached two lawyers about collecting the unpaid child support. Faced with financial difficulties as well as problems between Father and her oldest son, Mother chose not to then commence enforcement proceedings.

### B.

*A Trial Judge's Unmemorialized Oral Remarks, Made at Any Stage of the Nisi Prius Proceedings, Constitute No Part of the Trial Court's Order or Findings*

■ ¶ 16 According to Mother, the *trial court explicitly ruled there was no agree-*

*ment* between the parties whose terms were certain enough to be enforceable. For this view she directs us to the trial judge's oral comments made during the 20 December 2000 hearing.[31] She urges that because this oral "ruling" was not challenged by counter-appeal, it has become final and is now the settled law of the case.

■ ¶ 17 A trial judge's statements in announcing the post-decree order do not constitute her "findings of fact" and will not be considered *to vary the order* whose terms are to be measured solely by the recorded journal entry.[32] None of the remarks Mother relies upon here can be made a basis for reversal. They were not incorporated into the journal entry of the proceedings that followed the oral ruling.

### C.

*The Statutory Scheme in Force at the Time of the 1988 Divorce Decree*

■■ ¶ 18 The legislature recognized in 1987 that an *agreement-based reduction (or relinquishment) of past-due and owing child-support installments is effective in law.* According to the terms of 12 O.S.Supp. 1987 § 1277 (*renumbered 43 O.S. O.S.Supp. 1989 § 112* ),[33] the obligor-obligee parents by

---

**31.** Mother relies on the trial judge's unmemorialized statements in the transcript made of the 20 December 2000 hearing on Mother's enforcement quest:

> "It appears that they did have an agreement that the consideration for not being exposed to creditors would be something in return, *we don't know whether or not it was half the child support or what it was, since they're not clear on it.* It appears that there's an agreed choice to not enforce due to some threat of the children, which may have been the choice of Ms. Phillips at the time, and considering the length of time in which she has chosen not to try to collect the child support, it appears that it would be inequitable for this court to now, since the children will not benefit from the child support, in that they are no longer minors, that it addresses the public policy of not enforcing child support for the sake of the children."

(emphasis added).

**32.** *Thompson v. Inman,* 1971 OK 32, 482 P.2d 927, 937; *Irwin v. Irwin,* 1966 OK 146, ¶ 12, 416

P.2d 853, 857; *Diem v. Diem,* 1962 OK 124, ¶ 11, 372 P.2d 19, 23; *Moree v. Moree,* 1962 OK 95, ¶ 6, 371 P.2d 719, 722.

**33.** The terms of 12 O.S.Supp.1987 § 1277 (renumbered 43 O.S.Supp.1989 § 112) provided in pertinent part:

> "... If there are ... children [of the marriage], the court shall make provision for ... support, ... and may modify or change any order in this respect ... provided that the amount of the periodic child support payment shall not be modified retroactively or *payment of all of a portion of the past due amount waived, except by mutual agreement of the obligor and obligee* ...."

(emphasis supplied).
The 1990, 1993, 1994, 1996 and 1998 (eff. 4 March 1998) amendments did not substantially change the quoted text. The 1998 (eff. 1 Nov. 1998), 1999, 2000, 2002 amendments *do not affect this case because they were enacted after the last child-support payment became past-due and owing.*

"mutual agreement" may relinquish the "payment of all or a portion of the past due amount." "Mutual agreement" within the meaning of the statute *must address* and *be confined to* that part of the child-support obligation *which had accrued at the time of the agreement.*[34] The statute clearly *transformed* the *pre-existing equitable defense* of contract-based reduction (or relinquishment) of decreed child support *into a legal defense* and *limited* its effectiveness to the then-matured unpaid installments that were reduced (or relinquished) by mutual agreement. While the obligor-obligee parents can modify past-due and unpaid installments by agreement, future support is subject only to *prospective modification by the court.*[35] In sum, the outer reach of the parties' *mutual agreement* is the reduction (or relinquishment) of *matured installments,* while the outer limit of *statutory power* confines the court's authority to reducing (or modifying) *unmatured installments.*

### D.

### *The State of the Record That Addresses Father's Agreement–Based Defense*

¶ 19 We cannot assess, *on this record,* the legal effectiveness of the critical statutory agreement-based defense. This is so because on the dispositive point in question there is considerable **evidentiary vacuity.**

¶ 20 (1) We are unable to identify (with any degree of precision) the circumstances the noncustodial parent relies on to fashion his agreement-based "binding understanding" with Mother. There is here but paltry proof to support *either* an agreement-based reduction (or relinquishment) of child-support obli-

gation (by parol agreement) *or* the custodial parent's denial of the agreement's existence. Neither does the proof clearly reveal the *date* of the mutual agreement (or agreements), which is critical to ascertaining the amount of matured unpaid installments that stood relinquished by its terms.

¶ 21 (2) The trial court based the denial of Mother's enforcement quest on her *joint finding* of *laches* and of waiver by *agreement-based reduction of child support.* Today's pronouncement—that laches does not avail—will not support the ruling's affirmance on the latter defense. From this amorphous record we cannot tell whether, in the *absence of laches,* the so-called waiver defense would have been accepted by the trial court and made the basis for its ruling in Father's favor.[36]

¶ 22 There is another reason for *remanding* the cause instead of *directing* that the defense of contract-based reduction (or relinquishment) be rejected in postremand proceedings. Father's agreement-based defense was focused on *equitable considerations* rather than on the *statutory nature* of his defense. The *statutory defense* (based on the parties' "mutual agreement") was neither brought to the attention of, nor considered by, the trial court. The parties seem to have presented the case in total oblivion to the restrictive effect of a controlling statute on Father's waiver defense. Their lack of awareness is apparent not only from the transcript of the evidentiary proceedings, but also from the trial court's decision as well as from the briefs on appeal. Because Father did not know that the range of his agreement-based defense stood statutorily limited,

---

**34.** We interpret the statutory phrase "mutual agreement" to mean an agreement-based reduction (or relinquishment) of past-due and owing decreed benefits. The agreement may not affect any part of the obligation not yet due.

**35.** *See* the pertinent terms of 12 O.S.Supp.1987 § 1277 (renumbered 43 O.S.Supp.1989 § 112), *supra* note 33. *Baker v. Bursch,* 1962 OK 186, ¶ 17, 374 P.2d 31, 33–34; *Greeson v. Greeson,* 1953 OK 111, ¶ 9, 257 P.2d 276.
We note that effective 1 November 1999 a "standard agreed order form" must be "used by all parents *for any agreements* submitted to the court for approval as a part of the informal review and

adjustment process provided in Section 188 of this title." 43 O.S.Supp.1999 § 120(B)(2) (emphasis added). This 1999 amendment *has no effect on this case because it was enacted after the decree was entered 13 April 1988* and *after the last child-support payment became past-due and owing.*

**36.** On this record we can neither accept nor reject the argument that the tendered agreement-based defense is liability-defeating or liability-reducing. That is to be established by much clearer proof to be adduced on remand.

it is only fair that on this dispositive point he should have the opportunity to revisit that defense in light of those restrictions and to bring his theory within the ambit of statutory terms. In these circumstances, a ruling favoring Mother as a matter of law would be a less than equitable solution. Moreover, even if we could reject out-of-hand Father's agreement-based defense, there can be here no proceeding for enforced satisfaction of a judgment until the *quantum due has been ascertained below* and *the impact of the time-bar issue resolved.*

¶ 23 If the record is sufficient, this court will—in an appeal from an equity decision—render that decree which the chancellor should have entered.[37] When reviewing an equity case, an appellate court cannot exercise first-instance cognizance by making original findings of fact. Whenever necessary findings are absent, the cause must be remanded with directions that they be made.[38] Because we cannot anticipate what critical facts will be relied on for pressing Father's statutory agreement-based defense, the cause **must be remanded for a full adversarial hearing on that issue alone.**[39]

### VI

### THE PROCEEDINGS ON REMAND

¶ 24 In postremand proceedings the trial court shall, among others, (1) *reject* Father's laches defense; (2) *afford* Father the opportunity to adduce *proof of* a "mutual agreement" with Mother concerning reduction or relinquishment *of the then past-due and owing decreed child-support installments* and the *date it was made;* and (3) if there be ascertained a past-due-and-owing portion of the child-support obligation, *direct* that it be satisfied as a judgment

¶ 25 The proceedings to be conducted on remand **shall stand confined** to a full-scale inquiry into whether a *statutory agreement-based defense* (rested on a parol agreement or agreements and/or by acquiescence) can be found. **Both parties** are to be given the opportunity to develop the proof necessary to advance their respective positions. In its postremand consideration of the issue in contest the court should accord due importance to the subject matter of the mutual agreement. If it finds that a mutual agreement (or agreements) was made, it should establish its date for the purpose of ascertaining the quantum of matured unpaid installments that stood relinquished (or reduced) by its terms. If the agreement dealt only or partly with *future installments* it is *unenforceable* (*in toto* or *pro tanto* ), but if it dealt with *past-due and unpaid* installments, it is within the range of Father's statutory defense.[40]

¶ 26 Should the trial court rule that there was no viable statutory agreement-based reduction (or relinquishment) **or** that the parties' agreement (or agreements) does not reduce (or relinquish) *all* the overdue and unpaid installments, the trial court should consider the **impact, if any,** of postdecree (after-enacted) statutory changes that may legally affect the obligation sought to be satisfied.[41]

---

37. *Larman v. Larman,* 1999 OK 83, ¶ 18, 991 P.2d 536, 542–43.

38. *Id.*

39. Because in a post-remand retrial both parties may be able to secure proof sufficient to support their respective positions on whether an agreement-based defense should be allowed, the cause will be remanded for further nisi prius proceedings to afford them the opportunity to supply any deficiency in the record. Whenever an appellate court is of the view that other evidence may be produced on remand (*or is unable to say that such evidence may not be secured* ), it will not direct that the suit be terminated by judgment but rather will order the cause (in which the nisi prius decree stands reversed) to be remanded for

new trial. *Guinn v. Church of Christ of Collinsville,* 1989 OK 8, ¶ 22, 775 P.2d 766, 775; *Sherrill v. Sovereign Camp, W.O.W.,* 1938 OK 549, ¶¶ 12–13, 86 P.2d 295, 296.

40. *See* Part V(A), *supra.*

41. For the statutory scheme in force **at the time of the decree's entry,** see **12 O.S.Supp.1987 § 1291(A) and (C)** (eff. 1 Oct. 1987)(*renumbered* **43 O.S.Supp.1989 § 137),** *whose terms* (a) *transform an order in equity* (for the payment of continuing child support) *into a judgment by operation of law as each installment falls due and remains unpaid* and (b) *provided* that *the judgment* shall become **dormant if not enforced within five years.** For the 1996 amendment that extinguished the statute's dormancy provisions

## VII

## SUMMARY

¶ 27 The trial court's allowance of laches defense against Mother's enforcement quest in contest is clearly contrary to the weight of the evidence. Absent a laches defense, we cannot say on this record *whether an agreement-based defense alone would have led to the trial court's denial of Mother's enforcement quest.* Because affirmance of Father's nisi prius victory (on the agreement-based defense) is not his due, the cause stands remanded for a full adversarial re-inquiry into the merits of this defense against Mother's demand. In postremand proceedings to follow this pronouncement, the trial court may consider whether there was an enforceable agreement-based reduction or relinquishment and assess the amount of the obligation still due, if any. In the event the court finds that there is an unpaid obligation to be enforced, it should give Mother a judgment for that amount.

¶ 28 The trial court's post-decree order is affirmed in part and reversed in part; cause remanded for further consideration to be consistent with today's pronouncement.

## ¶ 29 ALL JUSTICES CONCUR.

and made the past-due and owing child-support installments enforceable until paid in full, see **43 O.S.Supp.1996 § 137** (eff. 1 Nov. 1996), *supra* note 12. For the statute that eliminated the five-year statute of limitations for enforcement of unpaid child support, see **12 O.S.1981 § 95(6)**. For the 1996 amendment that extinguished the time bar upon the enforcement of past-due and unpaid child-support installments, see **12 O.S.Supp.1996 § 95(9)**. Each of these after-enacted provisions should be carefully considered in order to ascertain its effect, if any, on the obligation that is sought to be enforced, keeping

in mind the rule that judgments are generally to be governed by the law in effect at the time they were entered. *Evans v. Evans*, 1993 OK 59, ¶¶ 10–11, 852 P.2d 145, 149.

We express no opinion (a) on Father's argument that he was entitled to a reduction in child support as each child reached majority or (b) on Mother's response that automatic modifications are prohibited by the provisions of **43 O.S.Supp. 1994 § 118(B)(1)** (*enacted eff. 1 Sept. 1994*). We cannot foretell, with any degree of accuracy, that these issues will arise again in postremand proceedings.