2005 OK CIV APP 25

**STATE of Oklahoma ex rel., The BOARD OF REGENTS FOR the UNIVERSITY OF OKLAHOMA, Plaintiff/Appellant,**

v.

**Matthew N. LIVINGSTON, Defendant/Appellee,**

and

**Laurie C. Defrancesco, Defendant.**

**No. 100,271.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 17, 2005.

---

Stephan L. Bruce, Richard S. Winblad, Clyde Anderson, Brandi L. Dotson, Oklahoma City, OK, for Plaintiff/Appellant.

James E. Pence, Pence & Housely, Norman, OK, for Defendant/Appellee.

Opinion by CAROL M. HANSEN, Judge:

¶1 In this action to recover on a defaulted student loan, Appellant, Board of Regents for the University of Oklahoma (University), appeals from the trial court's judgment that its claim was barred by the statute of limitations.

¶2 University filed its Petition on May 14, 2002. The Petition alleged Appellee, Matthew Livingston (Livingston), and Defendant, Laurie Defrancesco, "executed and delivered to [University] a promissory note" and "did not pay said note in accordance with the terms thereof."[1] Livingston, in his Answer, specifically denied University's allegations and, as affirmative defenses, asserted, *inter alia,* [a] the claim was barred by the statute of limitations and [b] University's "collection agency" failed to produce a copy of the subject promissory note after he had demanded production.[2]

¶3 The parties waived trial by jury and the case was tried to the court. The dispositive issues at trial were whether Livingston had actually executed the loan agreement and if University's claim was barred by the statute of limitations. To support his legal positions, Livingston adduced testimony from several witnesses, including himself, called by University to introduce the controverted promissory note and to prove Livingston's signature.

¶4 After the parties rested and argued, the trial court, *sua sponte* and from the bench, made several "findings of fact" relating to the promissory note. The court, however, took the statute of limitations question under advisement to allow the parties to submit additional briefs. The trial court later rendered judgment for Livingston, finding only in its Journal Entry of Judgment that "Plaintiff's claim is barred by the statute

of Limitations, 12 O.S. § 95." University appeals from that judgment.

¶5 University first contends that as a subdivision of the State of Oklahoma, it is not subject to any statute of limitations. University bases this contention on Art. 5, § 53 (hereafter § 53) of the Oklahoma Constitution, which provides, in pertinent part:

..., the Legislature shall have no power to release or extinguish, ..., in whole or in part the indebtedness, liabilities, or obligations of any corporation or individual to this State, or any county or municipal corporation thereof.

¶6 University's argument is that under § 53, the Legislature is constitutionally barred from enacting any statutory limitation period which would release or extinguish its claim to recover on a student loan under its administration. While Livingston concedes that generally University would enjoy the protection of § 53, he asserts that, under the facts here, that constitutional prohibition does not apply because the indebtedness, liability and obligation is not to University, but to a private fund merely administered by University. Thus, Livingston argues, the legal rights University is seeking to vindicate are private in nature, not public, and do not warrant application of § 53. *Oklahoma City Mun. Imp. Authority v. HTB,* 1988 OK 149, 769 P.2d 131.

¶7 Although the trial court did not make a specific finding in its judgment as to why § 53 did not apply, Livingston's argument here is the same as raised below, and as the only theory presented, may be presumed to be the rationale for the court's application of a statute of limitation. The trial court suggested its reasoning by asking University's counsel, "... this is not the State's money, was it?" and whether the "Constitutional article" applied to "nontaxpayer funds."

¶8 University cites *State ex rel. Oklahoma Student Loan Authority v. Akers,* 1995 OK CIV APP 75, 900 P.2d 468, in support of its

---

1. There were additional claims relating only to Defendant Defrancesco, however, service was never effected against her and she has not been a party to this action. University elected to proceed solely against Livingston on the single claim.

2. Livingston also filed a counter claim against University alleging abuse of process, but dismissed the counter claim without prejudice.

argument that "it was acting in a sovereign capacity on a 'public' right" in attempting to collect on the student loan. The *Akers* Court, also considering an action against a co-maker on a defaulted student loan, held:

> OSL is a state agency, operating under the trust authority of statute. [Citations omitted]. As a public trust enforcing public rights in the recovery of *state funded* educational loans, neither the statute of limitations nor the equitable doctrine of laches poses a bar to claims asserted by OSL. (Emphasis added).[3]

¶ 9 There is no disagreement that the loan here was from the "J.H. and M. Robey Loan Fund." The loan document had the bolded heading:

## PROMISSORY NOTE OF J.H. and M. Robey Loan Fund The University of Oklahoma Norman, Oklahoma

¶ 10 The promissory note was a printed form, with spaces for the name of the fund to be hand stamped, as it was here. There was no other mention of University on the form, which stated the maker and co-signer [Livingston] promised to pay the "J.H. and M. Robey Fund, hereinafter called the Foundation, located at Norman, Oklahoma." The "Foundation" was referred to as the party in all other places on the form. There is no reference to University as a party to the loan, nor is there any reference to University's right to administer or collect the loan.

¶ 11 The evidence regarding the J.H. and M. Robey Fund is limited. The witness who University used to introduce documents relating to the loan responded affirmatively to a question by the Court whether "it's money that the family has provided", and further stated—"The fund is administered by the university.... It's a revolving fund." On examination by University's counsel, the witness stated—"The university has full control over how the funds are disbursed. We're responsible for the collections. Our activities are audited and we have a letter on file at the university stating that we can function in this capacity for this loan fund." There is no other evidence of record on the origin or status of the funds used to make the loan here.

¶ 12 University asserts "the funds in question are property of [University]" pursuant to 70 O.S.1991 § 3209, which provides that "endowments, gifts, bequests, ..., shall belong to and be used only for and by the recipient institution." As noted above, however, there is no evidence the loan funds here resulted from an endowment, gift or bequest to University. Livingston does not dispute that University had the right to administer the loan, but contends that is not sufficient to make the loan "state-funded" so as to constitute University's actions vindication of public rights under *Akers*. Under the state of the evidence here, we agree. University was subject to a statute of limitations defense. The question then becomes, which limitation period pertains.

¶ 13 University contends the six year limitation period prescribed by 12A O.S.1991 § 3–118 is applicable rather than the five year period in accordance with 12 O.S. Supp. 1994 § 95(1). Section 95(1) pertains to actions "upon any contract, agreement, or promise in writing." Section 3–118 is the statute of limitations provision for Article 3 of Oklahoma's enactment of the Uniform Commercial Code [Negotiable Instruments] and was added when the Code was revised effective January 1, 1992.[4]

---

**3.** *See also, State of Oklahoma ex rel. Bd. of Regents of University of Oklahoma v. Greer,* 204 F.Supp.2d 1292 (W.D.Okla.2002). The Federal District Court determined the doctrine of equitable estoppel was "not, ordinarily, available to claims brought by an agency of the state", citing *Akers.* However, while one of the loans was from the "Lew Wentz Foundation", the origin and status of the loan funds was not at issue. The *Greer* Court, in citing *Akers,* did note the doctrine of estoppel was not available there because the Oklahoma Student Loan Authority was "a state agency enforcing public rights in recovery of *state-funded* educational loans." (Emphasis added).

**4.** The Commentary on the revised Article 3, provided by Legislative Review Committee of the Oklahoma Bar Association Banking and Commercial Law Section, notes, "The limitations period for actions on promissory notes, currently 5 years under 12 Okla.Stat. § 95 (First)(1971), is extended to 6 years." The Oklahoma Comments to § 3–118, notes, "For the most part, the limitations period will be longer under Section 3–118:

¶ 14 Under § 3–118, with an exception not relevant here:

> ..., an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date.

¶ 15 A promissory note is "payable at a definite time" if, *inter alia*, it is payable "at a time or times readily ascertainable at the time the promise or order is issued." Under the terms of the note here, interest is payable on July 1 of each year principal payments are not made, and principal repayments were to begin three months after the maker ceases to carry a "normal full-time academic workload." Repayment of principal was to be made "in equal monthly installments." Therefore, under its own terms, the promissory note was payable at a time or times readily ascertainable.

¶ 16 Livingston does not argue that § 3–118 should not be applied, but instead asserts it would make no difference because, under his statement of the facts, University's Petition was not filed within even the six year limitation period. We hold the trial court erred, as a matter of law, in applying the five year limitation period pursuant to 12 O.S. Supp.1994 § 95(1). The six year limitation period under § 3–118 should have been applied. Nevertheless, we must remand this matter to the trial court for a determination as to whether University's claim might be barred under that section.

¶ 17 University contends there are no remaining factual issues because the trial court resolved those issues with its "findings of fact." The trial court's statement of findings from the bench, however, did not become "settled law of the case" because they were not incorporated into the journal entry of judgment. *Hedges v. Hedges*, 2002 OK 92, 66 P.3d 364. Oral remarks made when announcing a trial court determination cannot be made a basis for reversing a judgment unless they are incorporated into the judg-

ment. *Thompson v. Inman*, 1971 OK 32, 482 P.2d 927.

¶ 18 The appellate briefs reflect a dispute on the date of the last installment payment on the note and the date on which the statute of limitations may have begun to run. "An appellate court will not make first-instance determinations of disputed law or facts issues. That is the trial court's function in every case—whether in law, equity or on appeal from an administrative body." *Bivins v. State ex rel. Oklahoma Memorial Hospital*, 1996 OK 5, 917 P.2d 456.

¶ 19 The trial court's judgment is accordingly REVERSED and this matter is REMANDED to the trial court for further action consistent with this opinion.

JOPLIN, P.J., concurs.

KENNETH L. BUETTNER, Chief Judge, dissenting:

¶ 20 The Oklahoma Constitution, Article 5, § 53, provides that no statute of limitations will bar collection of an indebtedness owed to the state. The University of Oklahoma is a constitutionally created state agency. Article XIII, § 8, Oklahoma Constitution. Where a state agency is acting in its sovereign capacity to vindicate public rights, then § 53 of the Constitution applies. Collecting state funded educational loans is the enforcement of a public right. *State ex rel. Oklahoma Student Loan Authority v. Akers*, 1995 OK CIV APP 75, 900 P.2d 468. There is no functional difference between the Oklahoma Student Loan Authority collecting student loans and the University collecting student loans.

¶ 21 The gift of money to the University became the property of the University. 70 Okla. Stat.2001 § 3209. When the University sought to recover its loaned funds from the Defendant, it was operating in its sovereign capacity to enforce a public right, and the Oklahoma Constitution protected it from application of a statute of limitations.

¶ 22 I respectfully dissent.

6 years, rather than 5 years under 12 Okla. Stat. § 95 (First)(1992)."